**WILLIAM J. KELLY CO., Inc. v. RECON-
STRUCTION FINANCE CORPORA-
TION.**

No. 4382.

United States Court of Appeals
First Circuit.

Feb. 28, 1949.

Rehearing Denied March 29, 1949.

Jack Goodman, of Albany, N. Y. (Paul T. Smith, of Boston, Mass., on the brief), for appellant.

Edward H. Hickey, Sp. Asst. to Atty. Gen. (H. G. Morison, Asst. Atty. Gen., William T. McCarthy, U. S. Atty., of Boston, Mass., and Richard E. Guggenheim, Atty., Dept. of Justice, of Washington, D. C., on the brief), for appellee.

Before MAGRUDER, Chief Judge, and MARIS (by special assignment) and WOODBURY, Circuit Judges.

MAGRUDER, Chief Judge.

William J. Kelly Company (hereinafter called Kelly), a Massachusetts corporation, brought suit in the United States District Court for the District of Massachusetts against the Reconstruction Finance Corporation and the United States. By stipulation, the action was subsequently dismissed as against the United States without prejudice.

In so far as is now material, the complaint alleged that on January 13, 1947, Kelly and the RFC entered into two written agreements (photostatic copies were attached to the complaint) by the terms of which Kelly "agreed to purchase and the defendant Reconstruction Finance Corporation agreed to sell certain cable and certain tractors, all of which was then in a deliverable state, for the sum of One Hundred Nine Thousand Four Hundred Forty-five Dollars and Seventy Cents ($109,445.70); and both of the aforesaid parties agreed that delivery was to be made on January 22, 1947." The complaint further

stated that Kelly had made timely payment of the agreed sum to the RFC, but that the RFC had "failed and refused and continues to fail and refuse to deliver said cable and tractors to the plaintiff". It was alleged that on the date of breach "the fair market value of said cable and tractors exceeded the aforesaid purchase price" and judgment was demanded for said purchase price plus the excess of the fair market value on the date of breach over the purchase price.

The RFC appeared specially and moved to dismiss on several grounds, some of which were waived prior to the hearing before the district court, and others of which were rendered moot by the subsequent dismissal of the action as against the United States. Though the motion did not explicitly set forth as one of its grounds that the complaint failed to state a claim upon which relief could be granted, the arguments of counsel at the hearing on the motion tacitly assumed that such ground of dismissal was presented, and the district judge evidently so regarded the motion. In support of its motion, the RFC submitted an affidavit of Chauncey Y. Dodds, Chief of the Small Business Division of the RFC. At the hearing, the plaintiff asked for and obtained leave to present within one week "a brief and such counter affidavits with respect to the facts as we deem required by the motion and affidavit already submitted." The brief was filed, but plaintiff did not avail itself of the opportunity to submit counter affidavits. Thereafter, the district court filed its memorandum allowing the motion to dismiss the plaintiff's action, on the ground that it failed to state a cause of action against the defendant, the RFC. On June 10, 1948, the court entered its judgment reciting that, in accordance with the memorandum allowing defendant's motion to dismiss, it is ordered "action dismissed, judgment for the defendant with costs". Kelly appeals from this judgment.

■ Since the district court did not exclude the affidavit of Dodds, but upon the contrary received it and accorded to the plaintiff an opportunity to submit counter affidavits, the motion to dismiss was in substance converted into a motion for summary judgment, even though the district court did not denominate it as such. Revised Rule 12(b) of the Rules of Civil Procedure, 28 U.S.C.A., provides: "If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." The action of the district court was in substantial compliance with the requirements of this rule, and there is no basis for a claim of surprise on the plaintiff's part. On this appeal we shall therefore treat the case as though a formal motion for summary judgment had been made by the defendant.[1] "The sufficiency of the allegations of a complaint do not determine the motion for summary judgment." Lindsey v. Leavy, 9 Cir., 1945, 149 F.2d 899, 902. Rather, it must be determined whether there is a "genuine issue as to any material fact. In many cases there is no genuine issue of fact, although such an issue is raised by the formal pleadings. * * * If there is no genuine issue of fact in controversy, the parties are not entitled to a trial and the court, applying the law to the undisputed material facts may render a summary judgment." 3 Moore, Federal Practice, § 56.01 (1938).

■ A brief statement of the background of this controversy will indicate, we think, that this case was a proper one for summary judgment.

When Congress enacted legislation for the disposal of surplus war property, special provision was made for small business. The Smaller War Plants Corporation was empowered "to purchase any surplus property for resale * * * to small business * * * when in its judgment, such disposition is required to preserve and strengthen the competitive position of small business, or will assist the Corporation in

---

[1] See comments on the above-quoted provision of Revised Rule 12(b) by the Advisory Committee on Rules for Civil Procedure.

the discharge of the duties and responsibilities imposed upon it." Surplus Property Act of 1944, § 18(e), 58 Stat. 774, 50 U.S.C.A.Appendix, § 1627(e). An amendment to § 18(e) in 1946 added: "The disposal of surplus property under this subsection shall be given priority immediately following transfers to other Government agencies * * * and disposals to veterans * * *." 60 Stat. 169. The functions of the Smaller War Plants Corporation under §§ 18(e) and (f) of the Surplus Property Act of 1944 were transferred to the RFC by Executive Order Dec. 27, 1945, No. 9665, 10 F.R. 15365 (1945), as corrected, 11 F.R. 3 (1946). See 61 Stat. 209, § 207, 50 U.S.C.A.Appendix, § 1101 note.

At the times here relevant, the War Assets Administration (WAA) was in charge of the surplus property disposal program, Executive Order No. 9689, 50 U.S.C.A.Appendix, § 1614a note, 11 F.R. 1265 (1946). WAA Regulation No. 2, Order No. 6, 11 F.R. 7774 (1946), was made applicable to disposals of surplus property to the RFC for resale to small business. The affidavit of Mr. Dodds sets forth numerous conclusions of law which we disregard as inappropriate to a document of this sort; but it also contains a factual statement, as of affiant's personal knowledge as required by Rule 56(e), of the administrative procedure adopted for the purchase and resale of surplus property to small business by the RFC, as follows: An applicant would visit the RFC office in his territory to establish his priority qualification as a small businessman. If the applicant wished to purchase certain property at a "WAA site sale", he filled in a form describing the property and specifying the date and location of the sale. An RFC representative would sign the form to approve the applicant's qualification, and the form would then be presented by the applicant to the RFC official stationed at the place of sale. The applicant would then select the property he wished and list it on a memorandum which would be signed by a WAA employee. This memorandum and the original RFC form would then be surrendered to the RFC site representative after a "commitment to purchase" on the RFC form had been signed by the applicant and shipping instructions filled in. The applicant was then required to pay the RFC the purchase price, after which the RFC would place an order with the WAA for the material sought by the applicant. It was provided in the order that delivery by the WAA would be made to the applicant in accordance with his shipping instructions. The funds paid to the RFC by the applicant were placed in a suspense account, to be paid over to the WAA if the transaction was consummated, or returned to the applicant if it was not.

The record indicates that in all significant respects the procedure outlined above was carried out in this case. Kelly concedes that its check for $109,445.70 was made payable to the RFC, and it appears that this sum has been returned. Kelly had been supposed to pick up the cable and tractors on January 22, 1947, but before that time the WAA decided not to make them available.

We may assume, without deciding, that if the transaction had actually been consummated, the formal mechanism would have been a purchase from the WAA by the RFC and then a resale by RFC to Kelly. But the most that can be said for the documents attached to the complaint, when read in the light of the disposal procedure in the present case, is that they show an undertaking by the RFC to "resell" goods chosen by Kelly and made available by the WAA, and it is undisputed that the WAA refused delivery here. The record suggests no genuine issue of any lack of due diligence on the part of the RFC in seeking to complete the transaction,[2] and therefore, as a matter

---

[2] The explanation appears to be that the WAA refused to deliver the goods for $109,445.70 because they had been improperly marked and had an actual market value considerably greater. It is, in fact, alleged in the complaint that "the fair market value of said cable and tractors exceeded the aforesaid purchase price." This doubtless raised the question of the WAA's authority to transfer the goods to the RFC at the lower price in view of the fact that purchases by the RFC under § 18(e) of the Surplus Property Act of 1944, as amended, are subject to § 12(c), 50 U.S.C.A.Appendix, § 1621 (c): "The disposal agency responsible for any such property shall transfer it to the Government agency acquiring it at

of law, no basis exists upon which the RFC could be held liable to Kelly for breach of contract.

The judgment of the District Court is affirmed.

the fair value of the property as fixed by the disposal agency * * *." Furthermore, § 18(e) makes the RFC's power to purchase surplus property for resale subject to regulations of the WAA, and § 5 of the aforementioned WAA Regulation No. 2, Order No. 6, provides: "Purchases by Reconstruction Finance Corporation shall be made at the fair value of the property * * *."