Brent L. BERRY, Plaintiff-Appellant,

v.

Al SOUZA, and his wife Jane Doe Souza, Defendants-Appellees,

and

Walston & Co., Inc., Defendant.

No. 75–3404.

United States Court of Appeals, Ninth Circuit.

Nov. 28, 1977.

Thomas L. Mui (argued), Honolulu, Hawaii, for plaintiff-appellant.

Robert H. Logan (argued), Long Beach, Cal., for defendants-appellees.

Before WATERMAN,* KENNEDY, and ANDERSON, Circuit Judges.

WATERMAN, Circuit Judge:

Appellant Berry brought an action in the United States District Court for the Western District of Washington against Walston & Company, Inc. (hereinafter "Walston"), a stock brokerage firm, and appellee Al Souza, an employee of Walston.[1] Each of the

---

\* Honorable Sterry R. Waterman, Senior Judge of the United States Court of Appeals for the Second Circuit, sitting by designation.

1. Souza's wife was also named as a defendant. The complaint which initiated the lawsuit was captioned: "BRENT L. BERRY, Plaintiff, vs. AL SOUSA and his wife JANE DOE SOUSA, and the marital community composed thereof; and WALSTON & COMPANY, INC., a foreign corporation, Defendants." Paragraph 3 of the complaint described the defendants Souza:

five claims contained in the complaint specifically alleged violations of either: (1) the anti-fraud provision of the Securities Exchange Act of 1934 (the "Act"), 15 U.S.C. § 78j; (2) the well-known regulations adopted pursuant to the anti-fraud provision of the Act; (3) various articles of the Rules of Fair Practice of the National Association of Securities Dealers ("NASD"); or (4) a supposed "implied representation [by Souza] that he would deal fairly with" Berry. Various paragraphs of the complaint, and particularly paragraph 17, also intimated that certain purchases made by Souza for Berry's account violated the margin requirements contained in so-called Regulation T, 12 C.F.R. §§ 220.1 et seq., a set of regulations promulgated by the Federal Reserve Board pursuant to the terms of the Securities Exchange Act, 15 U.S.C. § 78g. Upon stipulation of all parties, the pending civil action was transferred to the United States District Court for the Northern District of California, the Honorable Spencer Williams presiding. Souza and Walston then moved before that court for summary judgment on any and all of plaintiff's claims. On March 15, 1974, this motion was granted in part, the Judge ordering "that all of plaintiff's claims which are based on violations of Federal Reserve Board Regulation T and those claims based on violations of the Rules of Fair Practice of the National Association of Securities Dealers are dismissed." Subsequently, pursuant to an order of a bankruptcy judge, the district court below stayed the litigation as to Walston. Upon the claims not disposed of by the March 15, 1974 order the case then proceeded to trial against the Souzas alone and after that trial, judgment was entered in the Souzas' favor.

Berry appealed from the final judgment and also specifically from the order of dismissal of March 15, 1974. His sole contention before us, however, is that the grant of Souza's motion for summary judgment on any claims brought pursuant to Regulation

T should be reversed. We disagree and we affirm the final judgment below.

The facts material to any possible claim predicated upon Regulation T are not in dispute. Berry had a general margin account with the brokerage firm of Walston & Company. Souza, an Account Executive with Walston, was "in charge" of Berry's account. Souza did not, however, actively manage the account, for Berry, a former account executive at another brokerage house, was a knowledgeable investor who understood the operation of a margin account. It was clearly understood that Berry was to manage his own account and, rather than seeking investment advice from Souza, Berry expected that Souza would only follow Berry's instructions. As of October 10, 1972, Berry's account, which Berry characterized as "quite inactive," consisted of two thousand shares of the common stock of Braniff Airways and one thousand shares of the common stock of Syntex Corporation. Late in the day on October 10, Berry telephoned Souza and placed with him unsolicited "limit orders" (by which the customer imposes specified price limitations on the proposed transactions) for the sale of the Braniff and Syntex stock and for the purchase of various amounts of the common stock of other specified corporations.

The purchases and sales ordered by Berry were commenced on October 10 and completed on October 11. The transactions occurring on each day resulted in the brokerage house issuing calls for additional margin to Berry, one call on October 10 and one on October 11, in order that the transactions might satisfy the margin requirements of Regulation T. Subsequent to the issuance of these calls, however, and not at the time of them, Souza mistakenly told Berry that the calls were probably house "maintenance call(s)" and Berry claims that he was not advised that they were actually initial margin calls mandated by Regulation T. Berry did not meet these margin calls within the five-day period allowed by Regulation T.

"The defendants Al Sousa and his wife Jane Doe Sousa, (hereinafter called "Sousa") are residents of Hawaii and form a marital community under the laws of the State of Hawaii." Any reference in the opinion to "Souza" refers solely to the defendant Al Souza.

As it was permitted to do under 12 C.F.R. § 220.3(f), the brokerage firm then obtained from the Pacific Stock Exchange an extension of time so as to afford Berry additional time within which he might meet the margin calls. Again, Berry failed to meet the calls.

Consequently, in order to comply with the provisions of Regulation T, portions of the securities purchased on October 10 and 11 were "broken back" or "cancelled"; i.e., they were removed from Berry's account and sold so as to bring within legally acceptable limits the credit Walston had extended to Berry.

Subsequent to the partial cancellation and upon learning of the actual reason for the margin calls, Berry at various times demanded that the initial October 10 and 11 transactions be rescinded and that he be restored to his former position in the Braniff and Syntex securities.

As of mid-November, 1972, Berry was informed that Souza no longer had any control over the dispute that had arisen. At that time, Berry could have sold his holdings at a profit sufficient to cover the change in price of Braniff and Syntex between October 10, 1972, and mid-November 1972. However, Berry took no further action in his account. A series of margin calls were made but were not met and the account was gradually liquidated to meet these calls.

On this appeal Berry contends, as he seemingly did below, that the stock purchases of October 10 and 11, 1972 were made in violation of the Federal Reserve Board's Regulation T, 12 C.F.R. §§ 220.1 et seq. Inasmuch as the theory he advances to support this contention is somewhat difficult to grasp and even more difficult to restate, we shall not delineate appellant's position with any particularity. It suffices to say that we emphatically disagree that there was any violation of Regulation T here and we agree with the disposition made by the court below.

While it is true that Regulation T is violated when a brokerage house exceeds the permissible credit limitations in margin transactions, it must be stressed that under 12 C.F.R. § 220.3(b)(1)(ii), the investor need not provide the margin required on the purchases in advance of, or, for that matter, even at the time of those purchases. Rather, the regulation is violated only when whatever margin is required is not tendered by the investor within five full business days of the time the stock transactions in question occur. Furthermore, 12 C.F.R. § 220.3(f) provides for an extension of this five-day period in exceptional cases. If the broker is unable to procure the necessary margin from the investor within the five-day period, or proper extension thereof, then the broker is *compelled* by virtue of 12 C.F.R. § 220.3(e) to sell as many of the securities then in the investor's account as is necessary to meet the margin calls. *See Bowman v. Hartiq,* 334 F.Supp. 1323, 1327 (S.D.N.Y.1971).

With these principles in mind, we conclude that here there was no violation of Regulation T because the credit which was extended to Berry was extended in a manner and in an amount consonant with the requirements of Regulation T. The purchases of October 10 and 11 which Souza made for Berry's general margin account resulted in Regulation T margin calls being made against that account because the credit being extended by Walston, if not reduced by Berry's providing additional margin, would have exceeded the maximum amount of credit permitted by Regulation T. When it was unable to obtain the necessary deposit from Berry within the initial five-day period, Walston sought and received a § 220.3(f) extension from the Pacific Stock Exchange. Inasmuch as the brokerage house was again unable to obtain the required margin from Berry prior to the expiration of this extension period, the purchases of October 10 and 11 were partially "cancelled" in accordance with the requirements of 12 C.F.R. § 220.3(e); that is, some of the recently purchased securities were removed from Berry's general margin account and were liquidated "to make up for the default in deposit of sufficient collateral to maintain the account with proper margin." *Bowman v. Hartiq, supra* at 1327.

In resisting the defendants' motion for summary judgment, Berry's attorney argued before the district court that a violation of Regulation T occurred because "the defendants, without plaintiff's consent[,] placed plaintiff's general account in a position where additional margin was required." This allegedly unauthorized action on Souza's part arose (according to a brief and an attached affidavit of February 22, 1974 submitted by Berry in opposition to the defendants' motion for summary judgment) because Souza failed to comply with Berry's expressed desire that the transactions be carried out in such a way that no margin calls would be incurred.[2] Also, on this appeal Berry places particular emphasis on Souza's mistaken later statement regarding the reason why the margin calls were issued against Berry's account. If, on our present review of the grant of Souza's motion for summary judgment, we accept as an established fact Berry's assertion that Souza, by carrying out the transactions as they were carried out, ignored Berry's expressed desire that the transactions be accomplished in such a way that no margin calls would be incurred, and we further take as an undisputed fact Souza's admitted misstatement concerning the reason for the issuance of the margin calls, we nonetheless find no violation of Regulation T. This is not to say, of course, that Berry, may not have other common law or statutory grounds for legal recourse. However, we particularly note that on this appeal Berry does not challenge the dismissal of the other claims he asserted in the district court.

It is therefore clear, as a matter of law, that on the facts before us there was no extension of credit in contravention of the requirements of Regulation T. Souza was fully entitled to the summary judgment which was entered in his favor by the district court.

The judgment order of the district court is AFFIRMED.

2. More particularly, Berry claimed in the affidavit of February 22, 1974 that, in view of his expressed wish to avoid incurring any margin calls on the transactions, it was his belief that Souza realized that the transactions should be carried out on a same-day, dollar-for-dollar basis. But, unbeknownst to Berry, Regulation T had recently been amended, see 37 Fed.Reg. 13,972 (1972), so that the same-day, dollar-for-dollar substitution privilege (by which margin calls could be avoided) was, as of October 10, 1972, available only for accounts in which the investor had more than 40% equity. Berry stated in his affidavit of February 22, 1974 that under these conditions he could not have availed himself of the substitution privilege as of October 10, 1972 because his account did not satisfy the 40% requirement. On these facts there was thus no way in which the purchases Berry requested be made could be effected without a margin call being issued. Souza did not, however, inform Berry of this situation, as Berry claims he should have, but instead simply proceeded to carry out the sales and purchases for Berry's margin account in a way Berry asserts was directly contrary to his expressed desire to avoid margin calls.