**Franco VERRECCHIA, Plaintiff,**

v.

**PAINE, WEBBER, JACKSON & CURTIS, Higinio Leal and Pedro Tirado, Defendants.**

**Civ. No. 80–1221.**

United States District Court, D. Puerto Rico.

Nov. 30, 1982.

Walter Muñiz, San Juan, P.R., for plaintiff.

Carlos Bobonis, Bobonis & Besosa, Santurce, P.R., for all defendants.

## ORDER

ACOSTA, District Judge.

This is an action for restitution of losses and other damages allegedly caused by defendants' fraudulent misrepresentations and omissions in the management of plaintiff's security account contract. The facts are in essence as follows:

On March 26, 1975 Franco Verrecchia opened a general margin account for the purchase and sale of securities with Blyth, Eastman, Dillon & Co., the predecessor in interest of defendant Paine, Webber, Jackson & Curtis (hereinafter jointly referred to as Paine). Codefendants Pedro Tirado and Higinio Leal were employees and registered representatives of Paine, jointly or individually in charge of Verrecchia's account.

It is alleged[1] that the parties verbally agreed to invest plaintiff's funds in a low risk pyramid type investment portfolio consisting of approximately sixty percent in bonds, thirty percent in blue-chip stocks and ten percent in options. They also agreed not to place any security on margin for his account. Defendants, notwithstanding, entered into a series of discretionary margin transactions in "high-risk" securities for the sole purpose of producing brokerage fees. Although defendants informed plaintiff of each transaction through periodic flyers and monthly statements, such notices failed to inform Verrecchia of the exposure to financial risk that such venture entailed and the earnings result of the investment activity.

During this time Verrecchia questioned Leal and Tirado as to their handling of his account, to which they responded: "Why does it concern you; if you are making money, you must trust your broker". Not satisfied with their response, on July 3, 1975 plaintiff requested that defendants prepare a statement indicating the value of his investment portfolio. Despite their knowledge that Verrecchia had suffered a net loss in the trading activity, defendants submitted a document purporting to show that plaintiff's account had increased in value by approximately $6,000.

In December of that year Verrecchia requested a second valuation of his account. This time defendants reported a loss of $17,000 on plaintiff's original investment of $75,000. Later that month plaintiff demanded a reevaluation. Defendants then prepared another statement showing a loss of $30,000. It is averred that defendants knew that Verrecchia's account had lost $36,000 as of the date of the first December report. It is further alleged that upon receipt of these statements Verrecchia learned for the first time that he had suffered a loss on his investment.

Plaintiff closed his account in August of 1976. One year later, on August 25, 1977 attorney Jorge L. Izquierdo mailed, on behalf of plaintiff, a letter to Mr. Miguel Ferrer, Vice-president of Paine, requesting restitution of actual losses in the amount of

---

1. At this stage of the proceedings we assume that the allegations are true unless otherwise pierced by uncontradicted affidavits or documents included with the parties' motions for or in opposition to summary judgment. *William F. Kelly Co. v. R.F.C.,* 172 F.2d 865, 866 (1 Cir.1949)

$36,000 and loss of income caused by defendants' wrongful conduct. On September 14, 1977 Ferrer acknowledged receipt of said letter and informed plaintiff that the matter was referred to Paine's legal department. Plaintiff and defendant engaged in no further negotiations or communications until May 8, 1980 when attorney Gerardo A. Carlo demanded Paine redress for Verrecchia's losses.[2] Ferrer answered on May 13, 1980, again informing plaintiff that his claim for compensation would be referred to their in house counsel.

Sometime before August of 1976 Verrecchia informed Leal that he was planning to take legal action and requested the reimbursement of all commissions paid. At various times after this date plaintiff met with Tirado to discuss the events leading to the $36,000 loss on his investment. At no time was Tirado threatened with suit, nor does it appear from the record that a demand for restitution of damages was ever made to him.

On June 5, 1980 the original complaint was filed alleging violation of contract and fraud pursuant to the Securities Act of 1933, the Securities Exchange Act of 1934, and the Investment Advisers Act of 1940. Jurisdiction was invoked under the provisions of said acts, 15 U.S.C. §§ 77v, 78aa and 80a–43 respectively, and under the diversity of citizenship statute, 28 U.S.C. § 1332. On September 16, 1981, upon defendants' motion for summary judgment, we dismissed the action without prejudice (of filing an amended complaint) on the grounds of failure to state a cause of action and running of the period of limitations.[3] Verrecchia filed an amended complaint within the time allowed by the Court, reasserting his claims under the Securities Act of 1933 and the Security Exchange Act of 1934. Independent federal jurisdictional

statutes were solely invoked this time. Defendants have renewed their prior motion for summary judgment praying for the dismissal of the complaint. We now turn to the issues at bar.

A. Failure to state a claim upon which relief can be granted

■ For an action to lie under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, and Rule 10b–5 of the Securities and Exchange Commission, it is necessary for plaintiff to allege and show defendant's intent to deceive, manipulate or defraud plaintiff in connection with the purchase or sale of securities. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). As with all claims of fraud, mere conclusory averments unsupported by factual allegations are insufficient as a matter of law to state a claim under Section 10(b). Rule 9(b) of the Federal Rules of Civil Procedure; *Shemtob v. Shearson, Hammill & Co.,* 448 F.2d 442, 445–446 (2 Cir.1971); *Schaefer v. First National Bank of Lincolnwood,* 509 F.2d 1287 (7 Cir.1975), Cert. Den., 425 U.S. 943, 96 S.Ct. 1682, 48 L.Ed.2d 186 (1976); *Tomera v. Galt,* 511 F.2d 504, 508 (7 Cir.1975); *Valles Salgado v. Piedmont Capital Corp.,* 452 F.Supp. 853, 856–857 (DCPR 1978). It is insufficient to allege negligence, breach of contract or of a stock exchange rule. Plaintiff must plead those facts amounting to scienter, intent to defraud, reckless disregard for the truth or knowing use of a device, scheme or artifice to defraud in order to comply with Rule 9(b) of the F.R. C.P. *Shemtob v. Shearson, Hammill & Co.,* 448 F.2d at 445; *Segal v. Gordon,* 467 F.2d 602, 607 (2 Cir.1972).

■ On the other hand, claimant is not required to allege detailed evidentiary mat-

---

**2.** In his letter Carlo vaguely stated that certain negotiations carried on with Ferrer had proved fruitless. Ferrer denied holding any conversation with Verrecchia after September of 1977 in his reply letter of May 13, 1980 and by way of a sworn statement dated July 9, 1981, included in defendants' motion for summary judgment. Plaintiff has not filed any affidavit or document opposing defendants' averments.

**3.** Plaintiff's causes of action arising pursuant to 15 U.S.C. §§ 77q, 77o, 78g, 78j(b), 78t and 80b–6 were dismissed for failure to state a claim. His claim under 15 U.S.C. § 77l(2) was deemed time barred pursuant to 15 U.S.C. § 77m and Rule 9(f) of the Federal Rules of Civil Procedure.

ters. *Schlick v. Penn-Dixie Cement Corp.*, 507 F.2d 374, 379 (2 Cir.1974). The pleadings should be sufficiently detailed however, to inform defendant of the nature of the claim on fraud and allow the preparation of a responsive averment. 5 C. Wright & A. Miller, *Federal Practice and Procedure*, Sec. 1298 (1969). Plaintiff is thus required to allege facts identifying the context of the fraudulent scheme within the purview of the securities acts, the time period during which it was executed, and the damages caused to plaintiff, who relied on the misrepresentations. Cf. *Southern Dev. Co. v. Silva*, 125 U.S. 247, 250, 8 S.Ct. 881, 882, 31 L.Ed. 678 (1888).

■ The instant complaint contains more than conclusory averments. Plaintiff not only pleaded facts sufficient to show that defendants took advantage of his lack of knowledge on matters dealing with securities and the exchange market during the greater part of their contractual relationship, but that in July of 1975 they knowingly deceived him into believing that his investment increased in value for the implied purpose of earning commissions on the continued trading of securities to his account. Not content with that, in December of 1976 defendants purposefully underestimated the net loss in value of Verrecchia's investment. As a consequence of defendants' misrepresentations, the complaint alleges, plaintiff was unable to timely demand the discontinuance of margin transactions on high risk securities thereby preventing or at least reducing the eventual loss and the related commissions and interest expenses. We hold that Rule 9(f) requires nothing more.

The elements necessary to maintain a private cause of action pursuant to Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a), are almost identical to the exigencies required under Section 10(b) of the 1934 Act. *Valles Salgado v. Piedmont Capital Corp.*, 452 F.Supp. at 858 n. 8; *Lanza v. Drexel & Co.*, 479 F.2d 1277, 1280 n. 2 (2 Cir.1973); *United States v. Naftalin*, 441 U.S. 768, 773 n. 4, 99 S.Ct. 2077, 2081 n. 4, 60 L.Ed.2d 624 (1979). Having held that plaintiff has adequately stated a cause of action under Section 10(b), we need not dwell on this issue any longer.

■ Section 7(c) of the Securities Exchange Act, 15 U.S.C. § 78g(c) prohibits the extension or maintenance of credit to or for any customer in excess of the loan to value ratios prescribed by the Board of Governors of the Federal Reserve System, or in contravention of the collateral requirements established by regulations promulgated thereunder. In order to state a claim under Section 7(c) and Regulation T, 12 CFR 220.1 et seq., plaintiff herein must allege that he suffered a loss on a transaction effected by his broker on the basis of an illegal extension of credit. Cf. *Landry v. Hemphill, Noyes & Co.*, 473 F.2d 365, 370 (1 Cir.1973). No such averment is made in the complaint, nor is it supported by the affidavits or documents in the record. By itself, the issuance of margin calls against the express wishes of the account holder is not a violation of Regulation T. *Berry v. Souza*, 564 F.2d 1347, 1350 (9 Cir.1977).

■ Section 20 of the Securities Exchange Act, 15 U.S.C. § 78t imposes liability on every person who directly or indirectly controls a person who violates the act unless the controlling person acted in good faith *and* did not directly or indirectly induce the violation of right. Contrary to the common law standard of *respondeat superior*, Section 20 does not imposes absolute liability on the controlling person. As such he is liable for his own culpable acts.

The controlling person provisions, however, were not intended by Congress to fully restrict the liability of a principal for the wrongful acts of his agent performed within the scope of his authority. *S.E.C. v. Management Dynamics, Inc.*, 515 F.2d 801, 812–813 (2 Cir.1975) Accordingly, most of the circuit courts of appeals have adopted traditional agency principles to hold broker-dealers liable for the actions of their corporate directors, officers and employees with grants of authority notwithstanding the culpable participation requirements of Section 20. Id. at 813; *Holmes v. Bateson*, 583 F.2d 542, 560–561 (1 Cir.1978); *Marbury Management, Inc. v. Kohn*, 629 F.2d 705,

716 (2 Cir.1980), Cert. Den., 449 U.S. 1011, 101 S.Ct. 566, 66 L.Ed.2d 469 (1980); *Sharp v. Coopers & Lybrand,* 649 F.2d 175, 181–183 (3 Cir.1981); *Carras v. Burns,* 516 F.2d 251, 259 (4 Cir.1975); *Paul F. Newton & Co. v. Texas Commerce Bank,* 630 F.2d 1111, 1118–1119 (5 Cir.1980); *Holloway v. Howerdd,* 536 F.2d 690, 695–696 (6 Cir.1976); *Henricksen v. Henricksen,* 640 F.2d 880, 887–888 (7 Cir.1981); *Kerbs v. Fall River Industries,* 502 F.2d 731, 740–741 (10 Cir. 1974). Any other construction of the statute would foreclose the imposition of liability on corporations and other artificial persons,[4] for it is evident that these can only act through agents. *Holmes v. Bateson, supra; A.J. White & Co. v. S.E.C.,* 556 F.2d 619, 624 (1 Cir.1977), Cert. Den., 434 U.S. 969, 98 S.Ct. 516, 54 L.Ed.2d 457 (1977); Cf. *National Bank v. Graham,* 100 U.S. 699, 702, 25 L.Ed. 750 (1879). Moreover, even the courts that purport to rely exclusively on Section 20 to impose liability on incorporated broker-dealers must ultimately find that corporate agents induced the legal wrong or acted in bad faith.

Some courts of appeals have further extended the liability of broker-dealers to respond for the acts of their employees (or servants vis-a-vis agents) under the doctrine of *respondeat superior.* See for example, *Paul F. Newton & Co. v. Texas Commerce, supra; Sharp v. Coopers & Lybrand, supra; Carras v. Burns, supra; Marbury Management, Inc. v. Kohn, supra; Holloway v. Howerdd, supra.* Secondary, but strict liability is thus imposed on the employer once it is shown that the employee's fraudulent practices were performed within the scope of his employment. Contrary to the primary liability imposed on the principal for the acts of his agents, *respondeat superior* does not require a showing that the wrongdoer acted within his actual or apparent authority to bind the grantor.

We need not extend liability that far. Leal and Tirado were registered representatives of Paine and therefore agents of the corporation. *Fey v. Walston & Co., Inc.,* 493 F.2d 1036, 1052–1053 (7 Cir.1974) The alleged wrongful acts were performed within their grant of authority and in furtherance of the provisions of the account contract between Paine and Verrecchia. If proven, such facts are sufficient to hold Paine primarily liable for the damages suffered by plaintiff.

■ Verrecchia also alleges a cause of action for defendants' violation of the rules of the National Association of Securities Dealers and of the New York Stock Exchange. Suffice it to say that customers of securities brokerage firms have no implied cause of action under said provisions. *Jablon v. Dean Witter & Co.,* 614 F.2d 677, 679–681 (9 Cir.1980); Cf. *Touche Ross & Co. v. Redington,* 442 U.S. 560, 576–578, 99 S.Ct. 2479, 2490, 61 L.Ed.2d 82 (1979).

Our inquiry is not at an end. Having established that plaintiff has sufficiently stated causes of action pursuant to Section 10(b) of the 1934 Act and Section 17(a) of the 1933 Act against all the defendants, we must now determine whether the same are time barred.[5]

B. The applicable period of limitation

■ When Congress does not provide a statute of limitation for the exercise of civil actions, the limitations period applicable to an analogous action under state law is followed. *Holmberg v. Armbrecht,* 327 U.S. 392, 395, 66 S.Ct. 582, 584, 90 L.Ed. 743 (1946). The law of Puerto Rico provides three different statutes which may apply: the fifteen years limitation period for damage actions arising from a breach of contract, 31 L.P.R.A. § 5294 and *Segarra v.*

---

**4.** The 1933 and 1934 securities acts include corporations within their definition of person. 15 U.S.C. § 77b(2) and 78c(a); see also 15 U.S.C. § 77o.

**5.** In our Order of September 16, 1981 we dismissed plaintiff's claim under 15 U.S.C. § 77l on the grounds that it was barred pursuant to

the period of limitations specified in 15 U.S.C. § 77m. The amended pleadings and documents filed after said order have failed to produce any fact to change our holding. His claim under 15 U.S.C. § 77o will be accordingly dismissed. *Payne v. Fidelity Homes of America, Inc.,* 437 F.Supp. 656 (D.C.Ky.1977)

*Vivaldi,* 55 PRR 153 (1939); the two years term applicable to suits under the Puerto Rico Uniform Securities Act, 10 L.P.R.A. § 890(e); and the one year period for actions in tort, 31 L.P.R.A. § 5298.

Plaintiff strongly contends that the fifteen years limitation period should be applied since the present action seeks vindication for damages caused by fraud in the fulfillment of an obligation. We disagree.

■ In most cases where a complainant claims damages arising from fault or negligence in the performance of a contractual obligation the consequent action for restitution may be brought *ex delicto*[6] or *ex contractu.*[7] H. Brau, *Los Daños y perjuicios extracontractuales en Puerto Rico,* Sec. 1.09 (1980) The nature of the action will ultimately depend on the gravamen of the wrong alleged in the complaint. *Camacho v. Catholic Church,* 72 PRR 332, 340 (1951); *Lexington Insurance Co. v. Abarca Warehouses Corp.,* 476 F.2d 44 (1 Cir.1973). In selecting among various state limitation periods, however, we may not only rely exclusively on the particular set of facts of the case at bar, but rather on the nature of the federal statute which authorize said action. Cf. *United Auto Workers v. Hoosier Cardinal Corp.,* 383 US 696, 708–709, 86 S.Ct. 1107, 1114, 16 L.Ed.2d 192 (1966). Thus, the specific circumstance that the fraudulent acts alleged herein also constitute a breach of contract does not preclude this Court from characterizing a Section 10(b) action as a claim in tort or under the local securities laws. Indeed, privity between the wrongdoer and the injured party is not a requirement nor an impediment to the filing of such an action. *Mitchell v. Texas Gulf Sulphur Co.,* 446 F.2d 90, 100–102 (10 Cir.1971), Cert. Den., 404 US 1004, 92 S.Ct. 564, 30 L.Ed.2d 558, Reh. Den., 404 U.S. 1064, 92 S.Ct. 734, 30 L.Ed.2d 754, Cert. Den., 405 U.S. 918, 92 S.Ct. 943, 30 L.Ed.2d 788; *G & M, Inc. v. Newbern,* 488 F.2d 742, 745 (9 Cir.1973); *Shapiro v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.,* 495 F.2d 228, 239 (2 Cir.1974).

Neither is a contract action similar to a Section 10(b) claim. The interest protected in the former is the performance of obligations voluntarily accepted by specific parties to a binding agreement. Their underlying purpose is to preserve private rights acquired upon the consent of the debtor. On the other hand, actions under the securities laws promote economic and social policies independently of the intention of the persons who may be subject to its provisions. Their object is "to protect interstate commerce, the national credit ... [*and*] banking system ..., and to insure the maintenance of a fair and honest markets ...". 15 U.S.C. § 78b.

Moreover, the period of limitations applicable to contract claims is in conflict with the implied statutory policy favoring com-

---

6. Title 31 of the Laws of Puerto Rico Annotated provides:
   "Sec. 5141. Obligation when damage caused by fault or negligence
   A person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done. Concurrent imprudence of the party aggrieved does not exempt from liability, but entails a reduction of the indemnity."

7. Title 31 of the Laws of Puerto Rico Annotated provides:
   "Sec. 3018. Fraud, negligence, or delay in fulfilling obligation
   Those who in fulfilling their obligations are guilty of fraud, negligence, or delay, and those who in any manner whatsoever act in contravention of the stipulations of the same, shall be subject to indemnify for the losses and damages caused thereby."

"Sec. 3021. What constitutes fault or negligence
The fault or negligence of the debtor consists of the omission of the steps which may be required by the character of the obligation, and which may pertain to the circumstances of the persons, time and place.
Should the obligation not state what conduct is to be observed in its fulfilment, that observed by a good father of a family shall be required."
"Sec. 3375. How contracts are perfected
Contracts are perfected by mere consent, and from that time they are binding, not only with regard to the fulfilment of what has been expressly stipulated, but also with regard to all the consequences which, according to their character, are in accordance with good faith, use, and law."

paratively shorter terms. The 1933 and 1934 Acts consistently limit the time to exercise expressed private causes of action to one year after discovery of the wrongful act or omission, or three years after its consummation, whichever expires first. 15 U.S.C. §§ 77m, 78i(e), 78r(c) The fifteen years time limitation may be adequate when liability is established upon proof that defendant failed to do something he previously promised to perform, or that he did something he had agreed not to effect.[8] But when the action requires proof of a mental state—intent to deceive, manipulate or defraud, the ephemeral nature of the evidence demands a relatively rapid disposition of the claim. *Lexington Insurance Co. v. Abarca Warehouse Corp.,* 476 F.2d at 47 With time, memories fade, the perception of events change, conduct tends to be rationalized, documents are lost, thereby hindering the discovery of truth and the administration of justice. Such an extremely long period of limitation will thwart rather than promote the purpose of the federal securities fraud statutes.

The limitation terms for torts and local securities actions are more attuned to the requirements of the federal action. The Uniform Securities Act imposes civil liability on any person who offer or sells securities in contravention with its various registration and filing provisions or by means of any untrue statement or omission of any material fact.[9] While almost a word for word reproduction of Section 17(a)(2) of the Securities Act of 1933, 10 L.P.R.A. § 890(a)(2) is at first blush more restrictive in scope. Liberally read, nevertheless, the offer or sale of a security by means of an intended material misrepresentation encompass the use of any scheme to defraud (Sec. 17(a)(1)) and any practice or cause of business that would operate as a fraud or deceit upon the purchaser (Sec. 17(a)(3)). The damages recoverable by a private claimant from any person who violates local Section 890(a)(2) also parallel the judicial interpretations limiting the recovery under Section 17(a) to actual damages for economic losses.[10] *Greitzer v. United States National Bank,* 326 F.Supp. 762, 764 (S.D.Cal.1971); *Smith v. Manausa,* 385 F.Supp. 443, 452–454

**8.** Consistent with their underlying purpose, the essential elements of the contract and the Section 10(b) action widely differ. While in contract actions fault ('culpa') is generally deemed implicit in the debtor's acts or omissions in violation of his promise, VIII–1 Manresa, Código Civil Español, pp. 148–149 (1950), a Section 10(b) claim requires a stronger and specific showing of intent to defraud. Breach of contract is obviously not enough. *Shemtob v. Shearson, Hammill & Co.,* 448 F.2d at 445.

**9.** Title 10 of the Laws of Puerto Rico Annotated provides in its relevant part:
"Sec. 890. Civil liabilities
(a) Any person who
(1) offers or sells a security in violation of section 861(a), 871, or 885(b) of this title, or of any rule or order under section 883 of this title which requires the affirmative approval of sales literature before it is used, or of any condition imposed under section 874(d), 875(g) or 875(h) of this title, or
(2) offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading (the buyer not knowing of the untruth or omission), and who does not sustain the burden of proof that he did not know, and in the exercise of

reasonable care could not have known, of the untruth or omission, is liable to the person buying the security from him, who may sue at law to recover the consideration paid for the security, together with interest at six percent per year from the date of payment, cost, and reasonable attorney's fees, less the amount of any income received on the security, upon the tender of the security, or for damages if he no longer owns the security. Damages are the amount that would be recoverable upon a tender less the value of the security when the buyer disposed of it and interest at six percent per year from the date of disposition. . . .
(h) The rights and remedies provided by this chapter are in addition to any other rights or remedies that may exist at law, but this chapter does not create any cause of action not specified in this section or section 862(e) of this title."

**10.** Section 890 is not the exclusive remedy for actions based on the offer or sale of securities and other damages may be claimed pursuant to other rights and remedies provided by law. 10 L.P.R.A. § 890(f) and (h) The savings clauses under the 1933 and 1934 securities acts provide the same prerogative. 15 U.S.C. §§ 77p and 78bb.

(E.D.Ky.1974); *Globus v. Law Research Services, Inc.,* 418 F.2d 1276, 1283–1287 (2 Cir.1969).

The tort action statute is boundless in scope by comparison. It not only imposes liability for damages caused through willful or intentional conduct, but also through negligent acts or omission. Compensation for damages is thus predicated on a lesser standard than that called for under Section 17(a) of the 1933 Act or Section 10(b) of the 1934 Act. Cf. *Ernst & Ernst v. Hochfelder, supra.* Furthermore, a claimant under the Puerto Rico tort statute can recover all damages known to be suffered as a consequence of the wrongful act without exception.

 All considered, the private cause of action expressly provided under the Puerto Rico Securities Act supplies the closest resemblance to the federal securities fraud actions in issue. Likewise, the two year period of limitation regulating the filing of claims thereunder best effectuates the policy of the federal law. It is not so brief as to prevent the discovery of sufficient evidence to state a fraud claim under the securities laws; Cf. *Segal v. Gordon,* 467 F.2d 602, 607–608 (2 Cir.1972), nor is the period so extended as to operate as an injustice upon the parties.

C.   Timeliness of the action

 The adopted statute of limitations provides that "[*n*]o person may sue under this section more than two years after the contract of sale". While the state statute controls the time period in which an action may be filed, the federal common law determines when said period begins to run. *Holmes v. Bateson,* 583 F.2d at 561. Under federal law, an action will not accrue while the injured party remains in ignorance of the fraud or until such time it should have been discovered through the exercise of dili-

gent efforts. *Cook v. Avien, Inc.,* 573 F.2d 685, 694 (1 Cir.1978)

 Plaintiff should have been aware of defendants' misrepresentation in December of 1975, or shortly thereafter, upon receipt of their statement purporting to show the market value of his account. At that time plaintiff was first informed that he had suffered a loss on his investment. We know for certain however, that plaintiff knew of the fraudulent acts alleged in the complaint by August 25, 1977, the date of attorney Izquierdo's letter to Ferrer. Even considering that the statute of limitations was triggered at the later date, the action was barred when the original complaint was filed on June 5 of 1980.[11]

There being no other federal claim alleged in the complaint, and lacking jurisdiction to entertain any claim arising under state law, it is

ORDERED that the instant action be, and it is hereby dismissed.

The Clerk shall enter judgment accordingly.

---

11. Since the facts before the Court do not show that the period of limitation was extrajudicially tolled after August 25, 1977, we need not decide at this time whether said term is one of prescription or of extinguishment. Under the law of Puerto Rico, a term of prescription may be tolled upon the filing of a complaint, by the extrajudicial claim of the creditor or by acknowledgment of the debt by debtor. 31 L.P.R.A. § 5303 A term of extinguishment, on the other hand, may only be tolled by the institution of an action. See generally, *Ortiz Rivera v. Sucn. González Martínez,* 93 PRR 549 (1966).