**Hector Gonzalez BLANES, Esq., Plaintiff,**

v.

**PAINE WEBBER JACKSON & CURTIS, INCORPORATED, Defendant.**

**Civil No. 83–1948(PG).**

United States District Court, D. Puerto Rico.

Aug. 12, 1983.

Blas C. Herrero, Jr., Hato Rey, P.R., Nydia Maria Díaz Buxo, Caguas, P.R., for plaintiff.

Carlos Bobonis, Santurce, P.R., for defendant.

## OPINION AND ORDER

PEREZ–GIMENEZ, District Judge.

## I. INTRODUCTION

Plaintiff, Héctor González Blanes, ("González Blanes") seeks damages from defendant, Paine Webber Jackson & Curtis, Incorporated, ("Paine Webber") for alleged violations of the Securities Exchange Act of 1934 (15 U.S.C. 78a, et seq.), particularly Sections 10(b), 7(a), (c), 20(a) and 29(b); Rule 10b–5 promulgated thereunder by the Securities Exchange Commission (17 C.F.R. 240.10b–5); and Regulation T of the Federal Reserve Board (12 C.F.R. 220.1). Plaintiff also asserts a pendent claim under Article 1054 of the Puerto Rico Civil Code (31 L.P.R.A. 3018) and diversity jurisdiction, 28 U.S.C. 1332.

Plaintiff's essential charge against defendant is that it engaged in fraudulent acts in connection with the purchase of securities. Defendant has moved, pursuant to Rule 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing the complaint on the grounds that the averments therein do not state the circumstances constituting fraud with the required particularity and fail to state a claim upon which relief may be granted. For the reasons set forth below, defendant's motion is granted.

## II. BACKGROUND

Plaintiff González Blanes alleges that in the evening of April 27, 1983, Federico A. Felices ("Felices"), an authorized representative of defendant Paine Webber, visited plaintiff's residence in order to urge him to invest $100,000 in the purchase of "Washington State Public Power System's municipal bonds" (sic). According to plaintiff, Felices told him that the purchase of said bonds constituted an excellent investment inasmuch as they were fully guaranteed by an entirely reliable U.S. government agency, were easily marketable and were rated Aa/AA by Moody's and Standard and Poor's, respectively. Plaintiff claims, moreover, that Felices told him that the bonds would have a yield of a little over 10%, which yield was fairly good at the time.

Plaintiff further alleges that when this conversation took place Felices was well aware that the "Washington State Public Power System" (sic) had for some time been undergoing very serious financial difficulties and that these difficulties, which could end up in bankruptcy, would erode the value and rating of the bonds.

According to plaintiff, on May 2, 1983, he delivered to Felices $90,000 in U.S. Treasury notes that had matured two days before and gave him a personal check to the order of defendant in the amount of $10,000. Plaintiff claims that shortly thereafter, but prior to the actual purchase of the bonds, he came to know of the deceitful misrepresentations made to him by defendant, whereupon he tried to contact Felices and Miguel Ferrer ("Ferrer") (defendant's principal executive in Puerto Rico) by phone, to no avail. In view of this, plaintiff claims that he left word with Felices' secretary that he did not want to go ahead with the bond transaction.

Plaintiff further maintains that in subsequent days he again tried to reach them by phone in order to halt the bond transaction but was equally unsuccessful. For that reason, plaintiff claims that on May 20, 1983, he wrote a letter to Felices and on June 3, 1983, another letter to Ferrer demanding the immediate refund of the monies that he had entrusted to defendant. According to plaintiff, in spite of this defendant purchased the bonds for plaintiff's account and sent them by mail. Plaintiff claims that he attempted to return the bonds to defendant, that defendant refused to accept them, and that in view of defendant's refusal he deposited them in a safe vault and asked defendant to send for them.

Plaintiff seeks restitution of the $100,000 given to defendant to purchase the bonds, plus interest thereon; $150,000 for patrimonial and mental damages; $50,000 for loss of income; $1,000,000 for punitive damages; plus costs and attorneys' fees.

## III. DISCUSSION

A. Generally, Section 10(b) of the Securities and Exchange Act ("Section 10(b)") and Rule 10b–5 promulgated thereunder proscribe the use of any manipulative or deceptive device or contrivance in connection with the purchase or sale of any security. In order to state a claim under Section 10(b) and Rule 10b–5 plaintiff must allege that (1) defendant misrepresented or omitted to state material facts in connection with the purchase or sale of a security; (2) plaintiff relied to his detriment upon defendant's misrepresentations or omissions; and (3) defendant made the misrepresentations or omissions with scienter, that is, with an intent to deceive, manipulate or defraud plaintiff. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976); *Abrahamson v. Fleshner*, 568 F.2d 862 (2nd Cir.1967); *Verrecchia v. Paine Webber*, 563 F.Supp. 360 (D.P.R.1982); *Savino v. E.F. Hutton & Co., Inc.*, 507 F.Supp. 1225 (S.D.N.Y.1981); *Schlick v. Penn-Dixie Cement Corp.*, 507 F.2d 374 (2nd Cir., 1974); *Holdsworth v. Strong*, 545 F.2d 687 (10th Cir.1976); *Dupuy v. Dupuy*, 551 F.2d 1005 (5th Cir.1977); *Vallés Salgado v. Piedmont Capital Corp.*, 452 F.Supp. 853 (D.P. R.1978). Defendant contends that plaintiff fails to state a claim under Section 10(b) and Rule 10b–5 because the complaint does not meet the aforesaid pleading requirements.

It is well settled that mere conclusory allegations of fraud are insufficient as a matter of law to state a claim under Section 10(b) and Rule 10b–5. *Segal v. Gordon*, 467 F.2d 602; (2d Cir.1972); *Shemtob v. Shearson Hammill & Co.*, 448 F.2d 442 (2nd Cir.1971); *Carroll v. Bear, Stearns & Co.*, 416 F.Supp. 998 (S.D.N.Y., 1976); *Verrecchia v. Paine Webber, supra.*

Rule 9(b) of the Federal Rules of Civil Procedure requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity". This rule serves two purposes. First, it gives the defendant "fair notice of what plaintiff's claim is and the grounds upon which it rests." *Denny v. Barber*, 576 F.2d 465, 469 (2nd Cir.1978); *Shemtob v. Shearson Hammill & Co., supra;* Wright & Miller, *Federal Practice and Procedure*, Civil Section 1297, at 403–404. Secondly, the specificity requirement protects defendants "from harm that comes to their reputations or to their goodwill when they are charged with serious wrongdoing...." *Segal v. Gordon, supra*, at 607.

In the context of securities litigation, Rule 9(b) helps to reduce the possibility that "a plaintiff with a largely groundless claim will be able to simply take up the time to a number of other people by extensive discovery with the right to do so representing an *in terrorem* increment to the settlement value, rather than a reasonably founded hope that the process will reveal relevant evidence...." *Ross v. A.H. Robins Co.*, 607 F.2d 545, 557 (2nd Cir.1979); (*quoting, Denny v. Barber, supra*, at 470, *quoting, Blue Chip Stamps v. Manor Drug Stores, supra*, at 741).

It is insufficient to allege negligence, breach of contract or of a stock exchange rule. Plaintiff must plead those facts amounting to scienter, intent to defraud, reckless disregard for the truth or knowing use of a device, scheme or artifice to defraud in order to comply with Rule 9(b). *Shemtob v. Shearson Hammill & Co., supra; Segal v. Gordon, supra.*

Rule 9(b) governs the pleading of securities fraud claims arising under the securities laws as well as those arising under the common law. *Ross v. A.H. Robins Co., supra; Denny v. Barber, supra; Stromfeld v. Great Atlantic and Pacific Tea Co., Inc.*, 484 F.Supp. 1264 (S.D.N.Y. 1980); *Todd v. Oppenheimer & Co.*, 78 F.R.D. 415 (S.D.N.Y.1978).

In light of the principles stated above, there is no doubt that plaintiff's conclusory allegations as to defendant's fraudulent conduct (*e.g.*, "that, at time Defendant was making its proposition to him

in those terms, Defendant was well aware and knew that the Washington State Public Power System ... had been already undergoing for some time very serious financial difficulties ...", paragraph 3 of the complaint; "By reason of beguiling and deceiving proposals made by Defendant to Plaintiff ...", paragraph 4 of the complaint) are insufficient as a matter of law. *Shemtob v. Shearson Hammill & Co., supra; Carroll v. Bear, Stearns & Co., supra.*

Moreover, a close examination of the complaint reveals that, according to plaintiff's own averments of fact, he was neither deceived nor defrauded. Paragraph 4 of the complaint states that:

"*[B]efore* the Washington State Public Power System bonds were negotiated or delivered, *Plaintiff came to know* of the deceitful misrepresentations made to him by Defendant, whereupon he immediately tried to contact, by phoning Mr. Felices, and also Mr. Miguel Ferrer ... but not succeeding, complained of their sudden inaccessibility and isolation to, and left word with Mr. Felice's secretary of plaintiff's timely unacceptance of the transaction, relating to the said bonds ... Again, when repeatedly unable to communicate with defendant's local agents in order to hault off the proposed transaction, Plaintiff wrote a letter, first to Mr. Federico A. Felices ... and on June 3, 1983 to Defendant vice president, Mr. Miguel Ferrer ... demanding the immediate refund of the monies plaintiff in good faith had entrusted Defendant with ...." (Emphasis ours.)

These allegations, even if construed liberally and in the light most favorable to plaintiff, do not describe a fraud. They simply state that defendant failed to halt the projected transaction in spite of plaintiff's indications to that effect. Thus, they surely do not state a claim under Section 10(b) and Rule 10b–5 that may be cognized by this Court. *Shemtob v. Shearson Hammill & Co., supra; Verrecchia v. Paine Webber, supra.*

Furthermore, plaintiff has also failed to plead facts to identify the alleged misrepresentations, to show in what respect they are false, and to establish their materiality. Conclusory allegations such as: "at time Defendant was making its proposition ... Defendant was well aware and knew that the Washington State Public Power System ... had been already undergoing for some time very serious financial difficulties" (paragraph 3 of the complaint); "By reason of the beguiling and deceiving proposals made by defendants ...." (paragraph 4 of the complaint), do not satisfy Rule 9(b) of the Federal Rules of Civil Procedure. *Shemtob v. Shearson Hammill & Co., supra; Segal v. Gordon, supra; Carroll v. Bear, Stearns & Co., supra; Jacobson v. Peat, Marwick, Mitchell & Co.,* 445 F.Supp. 518 (S.D.N.Y.1977); *Schlick v. Penn-Dixie Cement Corp., supra.*

For the reasons stated hereinabove, we find that the complaint in the instant case fails to state a claim under Section 10(b) and Rule 10b–5 upon which relief may be granted.

■ In view of the fact that all of plaintiff's federal claims are being dismissed at the pleading stage, the pendent state claim under Article 1054 of the Puerto Rico Civil Code, 31 L.P.R.A. 3018, should be dismissed as well. *See, United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Massachusetts Universalist Convention v. Hildreth & Rogers Co.,* 183 F.2d 497, 501 (1st Cir.1950), *citing, Strochman v. Palmer,* 177 F.2d 427, 431–34 (1st Cir.1949).

■ Likewise, the complaint fails to state a claim under Article 1054 of the Puerto Rico Civil Code, 31 L.P.R.A. 3018, upon which relief may be granted. Article 1054 renders liable those who incur in fraud or deceit ("dolo"), *inter alia,* in the performance of their obligations. A claim for relief based on Article 1054 is thus governed by Rule 9(b) of the Federal Rules of Civil Procedure. Since, as we have stated above, plaintiff has failed to plead fraud with the requisite particularity, the complaint does not state a claim under Article

1054 of the Puerto Rico Civil Code upon which relief may be granted.[*]

■ B. Plaintiff also charges defendant with having violated Sections 7(a) and 7(c) of the Securities Exchange Act of 1934, 15 U.S.C. 78g(a), (c) and Regulation T promulgated thereunder by the Federal Reserve Board, 12 C.F.R. 220.1, *et seq.* Defendant contends that neither Sections 7(a) and 7(c) of the 1934 Act nor Regulation T create a private right of action, and that, even if such a private right of action existed, the averments of the complaint do not state a claim upon which relief may be granted.

Sections 7(a), *et seq.* and Regulation T reveal that securities may be purchased for cash or on credit. A customer who purchases securities for cash pays outright the full amount of the purchase price. On the other hand, a customer who buys on credit pays only part of the purchase price in cash and receives an extension of credit from the broker or dealer for the unpaid balance, using securities in his account as collateral. This is what is called a purchase "on margin".

Section 7(a) directs the Board of Governors of the Federal Reserve Board to lay down rules "with respect to the amount of credit that may be initially extended and subsequently maintained" on any non-exempted security. Section 7(c) makes it unlawful for an exchange member, broker or dealer, "directly or indirectly, to extend or maintain credit or arrange for the extension or maintenance of credit to or for any customer" on any nonexempted security in violation of the Board's rules. It is also unlawful for any member, broker or dealer to extend or maintain credit, or arrange for its extension or maintenance, on any collateral other than securities, or without collateral at all, except to the limited extent that the Board's rules may permit. It has been held that the purpose of Section 7 is to protect brokers from investors who would over extend their credit and become unable to pay for the securities purchased on margin. *Utah State University of Agriculture & Applied Science v. Bear, Stearns & Co.,* 549 F.2d 164 (10th Cir.1977), *cert. denied,* 434 U.S. 890, 98 S.Ct. 264, 54 L.Ed.2d 176, *Establissement Tomis v. Shearson Hayden Stone,* 459 F.Supp. 1355 (S.D.N.Y.1978).

Since plaintiff's complaint is totally devoid of allegations that the bonds were purchased on margin and that defendant incurred in an illegal extension of credit, it fails to state a claim under Sections 7(a), 7(c) and Regulation T upon which relief may be granted. *Verrecchia v. Paine Webber, supra.* Furthermore, in light of *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), there would seem to be no private cause of action under Section 7 and Regulation T. *See, Gilman v. Federal Deposit Insurance Corporation,* 660 F.2d 688 (6th Cir.1981); *Walck v. American Exchange, Inc.,* 687 F.2d 778 (3d Cir.1982); *Stern v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 603 F.2d 1073 (4th Cir.1979); *Utah State University of Agriculture & Applied Science v. Bear, Stearns & Co., supra.*

C. Plaintiff claims, moreover, that defendant violated Section 29(b) of the Securities Exchange Act, 15 U.S.C. 78cc(b). This section provides that every contract made in violation of the statute or any rule thereunder, as well as every contract whose performance would involve such a violation, is void as regards the rights of (1) any violator and (2) any person, not a party to the contract, who acquires any right thereunder with actual knowledge of the facts resulting in the violation.

---

[*] Assuming arguendo that plaintiff had stated a claim under Article 1054 of the Puerto Rico Civil Code and that securities broker Federico A. Felices, a citizen of Puerto Rico, was a person needed for the just adjudication of this action pursuant to Rule 19 of the Federal Rules of Civil Procedure, plaintiff would be precluded from asserting diversity of citizenship as an independent jurisdictional basis. *Kamhi v. Cohen,* 512 F.2d 1051 (2d Cir.1975); *Hass v. Jefferson National Bank of Miami Beach,* 442 F.2d 394 (8th Cir.1971); *Evergreen Park N. & C. Home, Inc., v. American Eq. Assur. Co.,* 417 F.2d 1113 (7th Cir.1969); Barnett v. Borg-Warner Acceptance Corp., *488 F.Supp. 786 (E.D.Ark.1980).*

Section 29(b) authorizes rescission of unlawful contracts, not unlawful transactions that were consummated under lawful agreements. *Drasner v. Thomson McKinnon Securities, Inc.,* 433 F.Supp. 485 (S.D.N.Y.1977); *Palmer v. Thomson & McKinnon Auchincloss, Inc.,* 474 F.Supp. 286 (D.Conn.1979); *Zerman v. Jacobs,* 510 F.Supp. 132 (S.D.N.Y.1981). An unlawful agreement under Section 29(b) is one which by its terms violates the statute or the rules and regulations thereunder. *See, Drasner v. Thomson McKinnon Securities, Inc., supra,* and cases cited therein. Since the complaint in the instant case is totally devoid of allegations that the customer agreement entered into between plaintiff and defendant is unlawful, it fails to state a claim under Section 29(b) upon which relief may be granted.

D. Plaintiff asserts that defendant's liability for the allegedly wrongful acts averred in the complaint is based on Section 20 of the Securities Exchange Act, 15 U.S.C. 78t. Section 20 imposes liability on every person who directly or indirectly controls a person who violates the act unless the controlling person acted in good faith and did not directly or indirectly induce the violation.

Since liability under Section 20 is secondary or vicarious, if the complaint fails to state a claim upon which relief may be granted under Section 10(b), Rule 10b–5, Sections 7(a), 7(c) and Regulation T, and Section 29(b), it is clear that it also fails to state a claim for relief under Section 20.

E. For the reasons above stated, defendant's motion to dismiss is hereby GRANTED. The Court ORDERS that the instant action be DISMISSED.

Judgment shall be entered accordingly. IT IS SO ORDERED.

