**David SEGAL, Plaintiff-Appellant,**

**v.**

**Lawrence GORDON et al., Defendants-Appellees,**

**and**

**Coburn Corporation of America et al., Defendants.**

**No. 600, Docket 71-2146.**

United States Court of Appeals, Second Circuit.

Argued May 8, 1972.

Decided Aug. 3, 1972.

**604**

Avrom S. Fisher, Brooklyn, N. Y., for plaintiff-appellant.

Anthony F. Phillips, New York City (Willkie, Farr & Gallagher, Stephen Greiner, New York City, of counsel), for defendants-appellees Harold Linden and Lawrence Gordon.

David B. Pollack, New York City (Pearlman & Pollack, Kenneth D. Pearlman, New York City, of counsel), for defendant-appellee Colonial Commercial Corp.

Before FRIENDLY, Chief Judge, and MOORE and ANDERSON, Circuit Judges.

MOORE, Circuit Judge.

Plaintiff-appellant, David Segal, appeals from two judgments, entered pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, dismissing his complaint against three defendants, Lawrence Gordon (Gordon), Harold Linden (Linden) and Colonial Commercial Corporation (Colonial).[1] The action remains pending against the fourteen other defendants. The appeals have been consolidated by order of this court. The issues considered relate to, and this opinion applies to, these three appellees.

This action is brought by a plaintiff, who alleges that he is a stockholder of Coburn Corporation of America (Coburn), and brings the action for the benefit of Coburn. On information and belief Segal alleges (1) that "in or about early 1970 Colonial . . . threatened to obtain control of Coburn and oust management of Coburn from control of it," (2) that the defendants "pursuant to a common plan, scheme, and conspiracy directly and indirectly through the use of the mails and other instrumentalities of interstate commerce . . . engaged in artifices, schemes, and devices to defraud Coburn and its stockholders in connection with the purchase and sale of securities," and (3) that pursuant to the conspiracy Coburn sold securities to

---

1. Segal v. Coburn Corp. of America, [1970–71 Transfer Binder] CCH Fed. Sec.L.Rep. ¶ 93,009 (E.D.N.Y.1971) [hereinafter cited as *Segal*]; Id. Civil Docket No. 70–720 (E.D.N.Y. Aug. 2, 1971) (unreported).

Colonial for less than adequate consideration. Damages "in excess of $5,-000,000" are claimed. A plethora of specified sections of the Securities Acts are cited as the bases for his claim.[2]

Solely at issue on appeal are (1) the sufficiency of the complaint and (2) the granting of summary judgments in favor of Linden, Gordon and Colonial under motions to dismiss as converted by the parties themselves by their numerous affidavits and memoranda into summary judgment motions. Narrow issues are thus presented on this appeal.

### I.

This case (and appeal) must be considered in the light of the individual calendar system in effect in the Eastern District of New York (as in many other districts) whereby the case, as soon as filed, is placed under the complete control of a particular judge, who is responsible for it from filing to ultimate disposition. By this efficient system the judge is in a position at all times to observe the status of each case, procedurally as well as substantively. The system also permits conferences, formal and informal, and the submission of such motions, affidavits and memoranda as may be appropriate and as the court may permit. As a result, the stage at which disposition of the pending proceedings can be made should be largely within the Court's discretion.

Prior to the time the motions now on appeal were made, a complaint had been filed. The defendant Coburn and other defendants had answered. The court had held a conference and had filed a "Conference Memorandum." On November 30, 1970, the court held a pre-trial conference. Thereafter, on December 28, 1970, defendants Linden and Gordon moved to dismiss the complaint pursuant to Rule 12(b)(6) ("failure of the pleading to state a claim upon which relief can be granted") together with required memoranda.[3] However, in addition to the motion, the defendants Linden and Gordon submitted affidavits in support thereof wherein they asserted, *inter alia*, that they were residents of Puerto Rico, that they had become directors of Coburn on August 15, 1969, that they had resigned on May 13, 1970, that they had not participated in any proposed transaction with Colonial as alleged in the complaint, that they were never members of Coburn's executive committee, never voted for any proposed sale to Colonial of Coburn's accounts receivable, that they were never officers of Coburn, and had voiced their opposition to any sale until further information was furnished to enable a proper evaluation thereof.

Plaintiff's counsel submitted an affidavit in opposition and a supplemental memorandum. In an endeavor to substantiate the allegation that Colonial threatened to "oust" Coburn's management, plaintiff's counsel in an affidavit sworn to on January 12, 1971, refers to, and places reliance on, an affidavit of Bernard Korn (President of Colonial), dated November 2, 1970, apparently served in support of a motion to dismiss an action entitled Marino v. Coburn Corporation of America et al., Civ. No. 70C960 (E.D.N.Y.). To the Korn affidavit is attached a press release dated January 19, 1970, wherein Korn is pur-

---

2. Sections 12, 15, and 17 of the Securities Act of 1933, 15 U.S.C. §§ 77*l*, 77*o*, 77q (1970). Sections 2, 10, 13, 14, 18, 20, and 29 of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78b, 78j, 78m, 78n, 78r, 78t, 78cc (1970), and unspecified rules and regulations of the Securities and Exchange Commission thereunder.

3. Linden and Gordon also based their motion to dismiss on the grounds that there was no jurisdiction over the subject matter (12(b)(1)), that venue was improper (12(b)(3)), and that service of process had been insufficient (12(b)(5)). The basis for these latter two grounds was that Linden and Gordon were no longer directors of Coburn and were presently residents of Puerto Rico, and that service on them had been effected by mail. Judge Dooling denied the motion on these grounds while deploring the informality of the service of process. *See Segal, supra* note 1, at 90,720–21.

ported to have announced that "preliminary discussions have been held with such [various members of Coburn's Board] directors looking towards the acquisition by Colonial of approximately 51% of the outstanding shares of Coburn common stock." \* \* \* "The making of such an offer was contingent [Mr. Korn stated] upon general market conditions, the respective prices of Colonial and Coburn stock and other factors which Colonial believed relevant being satisfactory to Colonial." Korn "could not reasonably predict future developments" and cautioned "against present trading in anticipation of the making of any exchange offer by Colonial."

Plaintiff's counsel in his affidavit of January 12, 1971, states that these "preliminary negotiations" form the basis for his allegation in the complaint wherein "Colonial had threatened to obtain control of Coburn and oust the management of Coburn from control of it." Thus, the trial court was advised of the proof upon which plaintiff's counsel relied and was able to draw its own conclusions as to the information which the release conveyed rather than accept counsel's unwarranted intimations and inferences. Plaintiff's counsel avers that he has examined Colonial's Form 8-K for the month of April, 1970, which shows the financial transaction between Colonial and Coburn of which plaintiff complains in his complaint dated June 1, 1970.[4]

4. This form disclosed that Colonial had purchased from Coburn retail installment credit contracts with an aggregate "debit" balance of about $8,000,000, as well as receivables having a "debit" balance of $5,000,000 that had been previously written off as uncollectible. The form indicated that Colonial purchased the receivables for $1,000,000 in cash and $4,000,000 in notes. The discrepancy between the debit value of the receivables sold ($13,000,000), and the face value of the consideration received by Coburn ($5,000,000), is claimed to have served as the basis of the damage claim in the complaint. There is no mention of whether the "debit" balance of $8,000,000 was offset by any credits for bad debts, or

In addition there was an affidavit of counsel for Linden and Gordon setting forth copies of relevant minutes of Coburn.

Thus, although the motion had originally been cast as a motion to dismiss the complaint, by the actions of the parties, it had been converted into a summary judgment motion and Judge Dooling so regarded it.

## II.

### Sufficiency of the Complaint

■ The complaint against Linden, Gordon and Colonial is clearly deficient. The allegations are wholly conclusory in nature and, in addition, fail to comply with Rule 9(b) of the Federal Rules of Civil Procedure: "In all avernments of fraud . . ., the circumstances constituting fraud . . . shall be stated with particularity." However, this fatal deficiency becomes somewhat academic —at least as to Linden and Gordon—in the light of the undisputed material facts which formed the basis for the trial court's decision.[5] Only the distorted inferences and speculations of plaintiff's counsel supply the grounds for his countervailing hypotheses.

### A. The Rationale for Rule 9(b)

One of the concerns behind the specificity requirement of Rule 9(b) has been

whether the $5,000,000 written off as uncollectible had any market value. The sale to Colonial was made up of receivables, some of which apparently had maturities of three years, and the stock of two wholly-owned subsidiaries of Coburn, Coburn Credit Co. of New Jersey, Inc. and Coburn Credit Co. of Pennsylvania, Inc. Plaintiff makes no allegation as to the value of the stock sold and, indeed, we are not even clear as to whether the $13,000,000 of receivables referred to constitutes some, any, or all of the assets of the two wholly-owned subsidiaries.

5. The facts upon which the trial court relied came to him "By affidavit and memorandum [wherein] plaintiff's counsel asserts that in fact, \* \* \*."

succinctly articulated by Professors Wright and Miller:

> When the pleader is asserting that third persons have been defrauded, he *may be unable to detail the claim and less particularity should be required.* Thus, simple allegations should suffice for claims of fraud in an informer's action or a derivative suit and primary reliance should be placed on the discovery process for uncovering factual details. However, since "strike suits" are especially common in these two contests, the desire to be assured that the action has some merit has motivated the courts to insist on a reasonably high level of specificity.[6]

Rule 9(b)'s specificity requirement stems not only from the desire to minimize the number of strike suits but also more particularly from the desire to protect defendants from the harm that comes to their reputations or to their goodwill when they are charged with serious wrongdoing:

> It is a serious matter to charge a person with fraud and hence no one is permitted to do so unless he is in a position and is willing to put himself on record as to what the alleged fraud consists of specifically.[7]

■ In response to these considerations this Court and our lower courts have been sensitive to the requirement that the circumstances constituting fraud be alleged with particularity. "Mere conclusory allegations to the effect that defendant's conduct was fraudulent or in violation of Rule 10b–5 are insufficient" Shemtob v. Shearson, Hammill & Co., 448 F.2d 442, 444 (2d Cir.1971); ". . . there must be allegation of facts [in a complaint under Rule 10b–5] amounting to deception in one form or another; conclusory allega-

tions of deception or fraud will not suffice" O'Neill v. Maytag, 339 F.2d 764, 768 (2d Cir.1964); "[i]t is now quite clear in this Circuit that allegations with respect to 10b–5 violations will not pass scrutiny if they do not allege with some specificity the statements allegedly constituting the fraud. Mere conclusory allegations to the effect that defendant's conduct was fraudulent or in violation of 10b–5 are insufficient" Matheson v. White Weld & Co., 53 F.R.D. 450, 452 (S.D.N.Y.1971); "[m]ere general allegations that there was fraud, corruption or conspiracy or characterizations of acts or conduct in these terms are not enough no matter how frequently repeated" Chicago Title & Trust Co. v. Fox Theatres Corp., 182 F.Supp. 18, 31 (S.D.N.Y.1960). *See* American Bank & Trust Co. v. Barad Shaff Securities Corp., 335 F.Supp. 1276, 1281–1282 (S. D.N.Y.1972). *See also* Kellman v. ICS, Inc., 447 F.2d 1305, 1309–1310 (6th Cir. 1971); Perma Research and Development Co. v. Singer Co., 410 F.2d 572, 576 (2d Cir.1969); Robison v. Caster, 356 F.2d 924–925 (7th Cir.1966); Reiver v. Photo Motion Corp., 325 F.Supp. 214 (E.D.Pa.1971); Tryforos v. Icarian Development Co., 47 F.R.D. 191, 195–196 (N.D.Ill.1969). *Cf.* Heart Disease Research Foundation v. General Motors Corp., 463 F.2d 98, 100 (2d Cir.1972) ("[e]ven under the liberal Federal Rules of Civil Procedure, there is a limit to how much a court may be called upon to divine in assessing the sufficiency of the complaint before it, particularly when the plaintiff is represented by counsel. . . . Although the Federal Rules permit statement of ultimate facts, a bare bones statement of conspiracy or of injury under the antitrust laws without any supporting facts permits dismissal"). A complaint alleging fraud should

---

6. 5 C. Wright & A. Miller, Federal Practice and Procedure § 1298, at 413 (1969) (footnotes omitted). *See id.* § 1296, at 400: " . . . the old cliche that actions or defenses based upon fraud are disfavored and are scrutinized by the courts with great care because they often

form the basis for 'strike suits' still retains considerable vitality." (Footnote omitted.)

7. 1A W. Barron & A. Holtzoff, Federal Practice and Procedure § 302, at 215–16 (Wright rev. 1960).

be filed only after a wrong is reasonably believed to have occurred; it should serve to seek redress for a wrong, not to find one.

### B. Application of Rule 9(b) to these Complaints

Plaintiff's complaint and his proposed amended complaint do not meet the requirements of Rule 9(b). The first complaint was obviously filed on the basis of little investigation or research.[8] The nature of the businesses of Coburn and Colonial, their places of business, the exchanges on which their shares are traded, the periods during which the directors served on the Coburn board, the nature and amount of the securities exchanged, or the dates of the transaction—none is disclosed. The allegations violate the general rule that Rule 9(b) pleadings cannot be based "on information and belief."[9] While the rule is relaxed as to matters peculiarly within the adverse parties' knowledge, the allegations must then be accompanied by a statement of the facts upon which the belief is founded.[10] Plaintiff's conspiracy claims are obviously founded more on an examination of Rule 10b–5 than on an investigation of the facts of the alleged fraud. The word "conspiracy" does not alone satisfy the specificity requirement of Rule 9(b).[11] A complaint cannot escape the charge that it is entirely conclusory in nature merely by quoting such words from the statutes as "artifices, schemes, and de-vices to defraud" and "scheme and conspiracy." While plaintiff was asked both by the court and by the defendants Linden and Gordon to specify his claims, no such particularization came forth.

The amended complaint, which we consider only as to Colonial,[12] suffers from the same defect—lack of specificity. In this complaint plaintiff shifts his focus to sections 13(d) and 14(e) of the 1934 Act.[13] The claim is that Colonial formed a "group" with the directors of Coburn to "dispose" of the shares of Coburn and therefore should have filed a Schedule 13D statement with the SEC. Alternatively, plaintiff claims that Colonial violated section 14(e) in announcing in its January press release an intention to make a tender offer to Coburn's shareholders when it had no such intention. There is no support for these assertions. That Colonial formed a group is founded on unmitigated speculation, and there is no basis for doubting that the release was meant to mean what it said: that the viability of the proposed offer was dependent in part on the reception given to the proposed offer by Coburn's management.

### C. Linden and Gordon

These two defendants presented sufficient evidence as to their non-participation in the transaction complained of. No evidence to the contrary was tendered. As the trial court said:

. . . a point is reached at which when a plaintiff in such a case is

---

8. *Compare* the investigation and research done by Mr. Brilliant and Mr. Rockler in Surowitz v. Hilton Hotels Corp., 383 U.S. 363, 368–372, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966).

9. 2A J. Moore, Federal Practice ¶ 9.03, at 1928 (2d ed. 1968).

10. *Id.* at 1928–29.

11. *Contrast* Stromillo v. Merrill Lynch, Pierce, Fenner & Smith, 54 F.R.D. 396, 397 (E.D.N.Y.1971), where, in denying a motion pursuant to 12(e) and 9(b) for a more definite statement of the claim, Judge Weinstein said of the complaint: "Practically nothing is left to the im-agination; the level of abstraction is as low as it is possible to get without erring on the side of verbosity."

12. Because plaintiff had appealed the dismissal of the complaint as to Linden and Gordon before applying to the court below to amend the complaint, that court even had it wished to do so had no power to permit the amendment as against Linden and Gordon. Grand Opera Co. v. Twentieth Century-Fox Film Corp., 235 F.2d 303, 308 (7th Cir. 1956); 3 J. Moore, Federal Practice ¶ 15.07 [2], at 856–57. *See* Janousek v. Doyle, 313 F.2d 916, 920 (8th Cir. 1963) *(per curiam)*.

13. 15 U.S.C. §§ 78m(d), 78n(e) (1970).

presented with specific evidence of the defendants' non-participation the plaintiff must come forward with some indication of the source from which he can with reasonable confidence expect to produce proofs to meet the defendants' specific points and the general nature of such proofs. That has not been done here.[14]

Although these undisputed facts were sufficient to support the judgments appealed from as to Linden and Gordon, the trial court proceeded to analyze the facts put before him in "affidavit, memorandum and exhibit material made available in this and the related case * * *" [70 C. 82—still pending before the court]. From this material the court concluded that "it is only too apparent that the action does not have its genesis in any reasonable quantity of evidence that the wrong charged ever actually took place" and that with respect to Linden and Gordon "the affirmative evidences of their positive transactions, are more than adequate in this posture of the record to entitle them to a dismissal of the complaint."

Plaintiff's counsel clamors for an opportunity to have "discovery". He has read in the Wall Street Journal of "preliminary discussions" between certain directors who "supposedly" were parties thereto and, although admittedly "nothing had been finalized" according to the press release, would have discovery "of the reasons and motivations for the announcement."

The courts should not lend themselves to this sort of pseudo-legal harassment. Were they to do so almost every announcement of corporate matters under discussion could be forced by Procrustean means into a lawsuit under the Securities Acts to inquire into the state of mind of every director exercising his individual judgment as to the problem before him.

Plaintiff produced nothing to counterbalance the scale so heavily weighted in favor of dismissal with respect to Linden and Gordon.

### D. Colonial

After judgment of dismissal had been entered (April 9, 1971) in favor of Linden and Gordon, Colonial also moved to dismiss the complaint (June 1, 1971). Plaintiff's counsel responded with his affidavit entitled "Affidavit in Opposition to Motion to Dismiss the Complaint." The affidavit was also submitted "in support of the application of the plaintiff for leave to amend the complaint."

### The Proposed Amended Complaint

The proposed amendment [as characterized by Judge Dooling in his opinion granting Colonial's motion to dismiss] reflects the persistent illusion that a complaint becomes a good complaint in the federal court if it cites enough sections of the '33 and '34 Acts and if supported by the statement that for all plaintiff's counsel knows discovery might disclose a state of facts upon which could be supported a reading that for all plaintiff's counsel knows discovery might disclose a state of facts upon which could be imposed a reading that might come into register with an arguable interpretation of at least one section of the '33 or the '34 Act, or [a Rule drawn thereunder]. (emphasis supplied)

Although the trial court's opinion, citing our decisions in Superintendent of Insurance of State of New York v. Bankers Life & Casualty Co., etc., 430 F.2d 355, and Drachman v. Harvey, 453 F.2d 722 (2d Cir. 1971), was delivered prior to the reversal by the Supreme Court of Superintendent, 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971), and this court's reversal en banc of Drachman, 453 F.2d 736 (2d Cir. 1972), the proposed amendment fails to comply with Rule 9.

The inadequacy of the complaint as to Linden, Gordon and Colonial under Rule 9, and the uncontroverted proof as to

14. Segal, supra note 1, at 96,722–23.

Linden and Gordon of non-participation call for affirmance of Judge Dooling's decision to dismiss as to these three defendants. If there be any substance to the charge that certain directors wrongfully allowed assets of Coburn to be sold for an inadequate consideration, any such wrong can be righted in an action properly pleaded in an appropriate forum.