Samuel DEUTSCH, Plaintiff,

v.

Robert G. FLANNERY, Robert C. Marquis, Richard W. Stumbo, Jr., Walter G. Treanor, John G. Bannister, Wayne T. Donnels, John G. McDonald, Justin Roach, Jr., Joseph Rosenblatt, The Western Pacific Railroad Company, and Union Pacific Corporation, Defendants.

No. 83 Civ. 5293 (JFK).

United States District Court, S.D. New York.

Sept. 27, 1984.

Richard M. Meyer, Milberg, Weiss, Bershad, Specthrie & Lerach, Ronald Litowitz, Bernstein, Litowitz, Berger & Grossmann, New York City, for plaintiff.

Leonard Joseph, John F. Collins, Dewey, Ballantine, Bushby, Palmer & Wood, New York City, for defendants Union Pacific and Western Pacific.

Robert J. Sussman, Winthrop, Stimson, Putnam & Roberts, New York City, for defendant Flannery.

Peter Fleming, Jr., T. Barry Kingham, Curtis, Mallet-Provost, Colt & Mosle, New York City, for the Director defendants.

## OPINION AND ORDER

KEENAN, District Judge:

### The Action

This action arises out of an alleged scheme on the part of the chief executive officer and members of the board of directors of Western Pacific Railroad Company ("WesPac") to allow the Union Pacific Corporation ("Union Pacific") to acquire WesPac for a price far below its actual worth. The plaintiff alleges that, in furtherance of this scheme, the directors of

WesPac refused to declare dividends despite prior representations of a contrary policy and participated with WesPac and Union Pacific in the issuance of a false and misleading tender offer document inducing WesPac shareholders to tender their shares to Union Pacific. In reliance upon this document, according to the allegations of the complaint, shareholders of WesPac tendered their shares to Union Pacific at a price far below their actual worth. The complaint further alleges that in return for recommending that the shareholders accept the tender, the chief executive officer of WesPac was awarded a top management position in Union Pacific.

Plaintiff, a former shareholder of WesPac, brought this action against Robert G. Flannery, the chief executive officer of WesPac; Robert C. Marquis, Richard W. Stumbo, Jr., Walter Treanor, John G. Bannister, Wayne T. Donnels, John G. McDonald, Justin Roach, Jr. and Joseph Rosenblatt, all former directors of WesPac (the "director defendants"); WesPac and Union Pacific alleging violations of sections 10(b) and 14(e) of the Securities Exchange Act of 1934 and rule 10b–5 promulgated thereunder and breach of common law fiduciary duties to plaintiff and others allegedly injured when they tendered their stock for less than its actual worth.

*Background*

WesPac is a rail carrier that provides freight and carrying services in Northern California, Nevada and Utah. In addition to its rail operations, WesPac operates a trucking business and owns substantial amounts of real property, including thousands of acres of land not used in its railroad operations.

Prior to 1979, WesPac's predecessor was a wholly owned subsidiary of Western Pacific Industries, Inc. ("WPI"). WPI formed WesPac to acquire the railroad, trucking and real estate properties of the wholly owned subsidiary. To fund the acquisition of these assets, WesPac, the newly formed company, issued 1,400,000 shares of class A common stock which it sold to the public at $10 per share. Ten thousand shares of class B stock were also issued. Under the offering plan, class B stockholders were entitled to elect a majority of the board of directors. Flannery, who had been president and chief executive officer of WesPac's predecessor purchased a majority of the class B stock, and thereby obtained control of the new company.

On or about January 30, 1980, Union Pacific offered to purchase any and all of the shares of WesPac for $20 per share. WesPac shareholders received a document from Union Pacific that solicited tender of their shares, described the business assets and value of WesPac, stated the purpose of the tender offer and contained a unanimous recommendation of the WesPac board that the shareholders accept the offer because the board regarded the price as fair. The tender offer document calculated the book value of WesPac's stock at $12.79 per share.

The tender offer document, issued by Union Pacific, referred the offerees to WesPac's Prospectus included as part of its Registration Statement dated March 28, 1979 and other public filings for further information concerning WesPac. The Prospectus revealed that WesPac owned approximately 5,000 acres of land unrelated to its railroad operations with a cost basis of $2,300,000 and a tax appraisal value of $9,000,000. It also reported that some of the land had been sold recently for an aggregate sale price that was substantially greater than cost basis. Although an agreement had been reached to sell another parcel of land at a similar price, the prospectus reported that there was no assurance that comparable profits would be realized on future land sales.

In May, 1983, WesPac issued a proxy statement disclosing that certain of WesPac's land holdings had been sold for an amount far in excess of book value and that appraisals of its remaining land holdings revealed that those holdings had a market value substantially greater than book value.

Plaintiff then brought this suit, claiming that the tender offer document was mis-

leading because it failed to disclose that (1) included among the assets of WesPac were real estate assets worth far more than suggested by the $12.79 book value per share reported, which was based on historical costs rather than market values, (2) defendants planned for Flannery to acquire a management position with Union Pacific and (3) the failure to pay dividends on WesPac's shares was due to a scheme among the defendants to depress the market price of the stock. Plaintiff also claims that the recommendation of the WesPac board that the shareholders accept the tender because the board regarded the price as fair was false and misleading because the directors were aware of the manner in which the real estate assets were valued and, thus, that the shares were worth far more than the price offered.

*The Motion*

Defendants have moved to dismiss the federal securities law claims on the ground that the fraud allegations are not pleaded with the particularity required by rule 9(b) of the Federal Rules of Civil Procedure and, therefore, that they fail to state a cause of action. Defendants urge that dismissal of the securities claims mandates dismissal of the common law fraud claims for which there will be no federal jurisdictional basis once the securities claims are dismissed.

*Discussion*

Plaintiff does not contest defendants' claim that fraud must be pleaded with particularity. He contends that, unlike complaints, such as the one filed in *Decker v. Massey-Ferguson*, 681 F.2d 111, 115 (2d Cir.1980), which contained generalities and conclusions to the effect that defendants presented an inflated picture of the issuer, his complaint contains precise descriptions of the defendants' fraudulent conduct. He urges the Court to note, however, that the particularity requirement of rule 9(b) should be harmonized with the directive of rule 8 that pleadings should contain a "short and plain" statement of the claim. *See Ross v. A.H. Robins Company*, 607 F.2d 545, 557 n. 20 (2d Cir.1979), *cert. de-*

*nied*, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980). He also urges the Court to consider the Supreme Court's recent statement that "securities laws combatting fraud should be construed 'not technically and restrictively, but flexibly to effectuate their remedial purposes,' " *Herman & McLean v. Huddleston*, 459 U.S. 375, 386, 103 S.Ct. 683, 690, 74 L.Ed.2d 548 (1983), *quoting SEC v. Capital Gains Research Bureau*, 375 U.S. 180, 195, 84 S.Ct. 275, 284, 11 L.Ed.2d 237 (1963), when evaluating earlier Second Circuit decisions applying rule 9(b).

The Second Circuit has identified four purposes served by rule 9(b). The first and most obvious purpose of the rule is to ensure that defendants have sufficient information concerning the conduct with which they are charged to frame a responsive pleading. *Denny v. Barber*, 576 F.2d 465, 470 (2d Cir.1978); *Merritt v. Libby, McNeil & Libby*, 510 F.Supp. 366, 373 (S.D.N.Y.1981). The rule also serves to protect defendants from the harm that comes to their reputations and to their good will when they are charged with serious wrongdoing by providing a means for dismissing such charges when they are not adequately grounded. *See Ross*, 607 F.2d at 557. In securities litigation, the rule diminishes potential strike suits that are groundless but filed for their settlement value. *Id.; Crystal v. Foy*, 562 F.Supp. 422, 424 (S.D.N.Y. 1983). Finally, the rule prevents waste of the courts' time with groundless claims. *See id.* The Court finds that these purposes remain valid and are not affected by the ruling in *Huddleston* that the securities laws should be construed to effectuate their remedial purposes. Rule 9(b) is directed at the pleadings filed in an action, not its merit. If the complaint alleges fraud, it states a cause of action only if the conduct alleged can be fairly viewed as fraudulent. *See Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 473–74, 97 S.Ct. 1292, 1300–01, 51 L.Ed.2d 480 (1977). Rule 8 and the ruling in *Huddleston* do not change this pleading requirement.

To state a claim under section 10(b), plaintiff must allege acts indicating an intent to deceive, manipulate or defraud. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 192 n. 7, 96 S.Ct. 1375, 1380 n. 7, 47 L.Ed.2d 668 (1976). Similar acts must be alleged to support a claim under section 14 that sounds in fraud. *See Billard v. Rockwell International Corporation*, 683 F.2d 51, 56–57 (2d Cir.1982); *Brayton v. Ostrau*, 561 F.Supp. 156, 163 (S.D.N.Y.1983). Rule 9(b) requires that the circumstances constituting the fraud be stated with particularity. *Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 115 (2d Cir.1982). To meet this requirement the complaint must allege specific facts, sources that support the alleged specific facts and a basis from which an inference of fraud may be fairly drawn. *Crystal v. Foy*, 562 F.Supp. 422, 425 (S.D.N.Y.1983).

The complaint filed in this action alleges specific facts and cites sources that support those facts. It does not, however, establish a basis from which an inference of fraud can be drawn. From the fact that a 1983 proxy statement reported sales of WesPac's land holdings for amounts substantially in excess of historical cost and substantial current estimated appraised values for remaining real estate, plaintiff asks the Court to infer that the stock was worth more than $20 per share in 1980 and that defendants were aware of that value. This requires the secondary inference that defendants were aware of or recklessly disregarded the value of the land in calculating the value of WesPac stock and recommending that the shareholders accept the $20 tender.

Knowledge and reckless disregard cannot be inferred from allegations based on information and belief alone. *Segal v. Gordon*, 467 F.2d 602, 608 (2d Cir.1972); *Weinberger v. Kendrick*, 451 F.Supp. 79, 82 (S.D.N.Y.1978). Specific facts giving rise to a strong inference of such knowledge or disregard, known as scienter, must be alleged. *Decker*, 681 F.2d at 119–20; *Ross*, 607 F.2d at 558. The complaint is devoid of facts suggesting that defendants were remiss in valuing the stock or possessed of information indicating that the valuation was incorrect. *See Weinberger*, 451 F.Supp. at 83 (facts from which to infer that defendants possessed information indicating the true financial picture of the corporation required). The conclusory statement that defendants were aware of or recklessly disregarded the value of the land is insufficient. *See Trans World Corporation v. Odyssey Partners*, 561 F.Supp. 1315, 1323 (S.D.N.Y.1983).

The complaint is also devoid of facts indicating that the market value of the land was substantially greater than its historical cost in 1980. From the facts alleged there is no basis for concluding that the size of the land holdings has not changed or that the value of the land has not increased since 1980. Without facts indicating the value of the land in 1980, an inference that defendants were aware that the tender price was inadequate because it did not reflect the market value of the land is unwarranted.*

Furthermore, the facts alleged and incorporated in the complaint suggest that defendants were not aware that WesPac stock was worth more than the tender offer price. In 1979, WesPac stock was sold to the public at $10 per share. In 1980, the WesPac directors sold their stock to Union

---

* The Court notes, but does not rely on, the decision of the Court of Appeals for the District of Columbia in *Southern Pacific Transportation Company v. ICC*, 736 F.2d 708, 726 (2d Cir. 1984), in which the District of Columbia Circuit affirmed the Interstate Commerce Commission's finding that $20 per share tender offer price was a "fair and reasonable" price for WesPac shares. A minority shareholder had objected to the Interstate Commerce Commission's finding, claiming that the Commission had unreasonably failed to take into account WesPac's land holdings in evaluating the price. The Commission had determined that the value of WesPac's stock could best be measured by the company's earning power as reflected by performance in the stock market rather than the book value of the company because it was a going concern. The Court of Appeals found that this methodology was reasonable and that the conclusion that the price was fair was supported by substantial evidence.

Pacific for approximately $20 per share. The fact that defendants sold or caused to be sold WesPac stock at these prices belies the inference that they were aware that the $20 price was inadequately low.

▮ The facts also do not support an inference of fraud in the defendants' failure to disclose that the $12.79 book value reported in the tender offer document was inadequate because it did not reflect the market value of the real estate. WesPac had disclosed the existence of its land holdings, its cost value and tax appraisal value shortly before the tender offer. It also disclosed sales of real estate for amounts in excess of those values. A claim of fraud, therefore, cannot be based on failure to disclose the existence of the land and its value because that information had already been disclosed. *See Seibert v. Sperry Rand Corporation,* 586 F.2d 949, 952 (2d Cir.1978) (no fraud in failing to disclose public information); *Fisher v. Plessy Co.,* 559 F.Supp. 442, 446 (S.D.N.Y.1983) (no fraud in failing to disclose if shareholders could reasonably be expected to be aware of information omitted). A claim of fraud cannot be based on the defendants' failure to report the future market value of the land because they were under no obligation to report that value. The federal securities laws do not require disclosure of predictions regarding future values. *See Rodman v. Grant Foundation,* 608 F.2d 64, 72 (2d Cir.1979); *Billard v. Rockwell International Corp.,* 526 F.Supp. 218, 221 (S.D.N.Y.1981) *aff'd,* 683 F.2d 51 (2d Cir.1982).

Plaintiff also asks the Court to infer that Flannery traded his control position in WesPac for the top management position in Union Pacific from the fact that Flannery assumed an executive position at Union Pacific two years after the tender offer. Plaintiff claims that the fact that Flannery was to assume that position in return for acquiescing in and supporting the tender offer should have been disclosed in the tender offer document. The document disclosed that Flannery had an employment agreement with WesPac that would survive the merger but did not disclose what posi-

tion he would hold. The 1983 proxy statement revealed that in July, 1982, Flannery assumed the position of president of Missouri Pacific Railroad, a subsidiary of Union Pacific, following the death of the previous holder of that position. In December of that year, he was elected to the additional position of president of Union Pacific. These facts do not create an inference that he was awarded this position in consideration of his going along with Union Pacific's alleged plan to defraud WesPac shareholders.

Similarly, the facts alleged do not support an inference that the members of the WesPac board did not declare dividends on WesPac stock prior to the tender offer because they wanted to depress the market price of the stock and thereby facilitate the tender offer. The mere fact that a company passed dividends is not enough to support an inference that it did so fraudulently. The facts alleged do not even indicate that the company could have paid dividends.

▮ As the complaint does not allege facts indicating an intent to deceive, manipulate or defraud or from which such intent may be reasonably inferred, it does not comply with the particularity requirements of rule 9(b). The federal securities law claims, therefore, must be dismissed. As was stated by the Second Circuit in *Segal,* 467 F.2d at 607–08, "a complaint alleging fraud should be filed only after a wrong is reasonably believed to have occurred; it should serve to seek redress for a wrong, not to find one." *Accord Crystal,* 562 F.Supp. at 433. It is immaterial that the details and specifics of the fraudulent conduct may be within the knowledge or files of the defendants. Without facts from which a inference of fraud can be drawn, plaintiff is not entitled to use the provisions of the discovery rules to find those facts. *See Denny v. Barber,* 73 F.R.D. 6, 10 (S.D.N.Y.1977), *aff'd,* 576 F.2d 465 (2d Cir.1978).

▮ Because the federal securities law claim is dismissed, the pendent state law claim is dismissed also. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86

S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Without the federal securities claim, the Court lacks subject matter jurisdiction over the common law claims. These claims are dismissed, therefore, for lack of subject matter jurisdiction.

The complaint is dismissed without prejudice.

SO ORDERED.