Robert FINGAR, as custodian for Christopher Fingar, and Susan Fingar, as custodian for Karen Fingar, Plaintiffs,

v.

PRUDENTIAL–BACHE SECURITIES, INC. and Prudential Insurance Company of America, Defendants.

No. 86 C 1654.

United States District Court, E.D. New York.

March 31, 1987.

---

Eric H. Holtzman, Hauppauge, N.Y., for plaintiffs.

Obermaier, Morvillo & Abramowitz, P.C. (Elkan Abramowitz and Faye Kessin, of counsel), New York City, for defendants.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

Plaintiffs Robert and Susan Fingar seek in an amended complaint to recover alleged losses resulting from their investment, as custodians for their minor children, in shares of common stock of the Western Union Corporation (Western Union). Plaintiffs allege that defendants, Prudential-Bache Securities, Inc. (Bache) and its corporate parent, Prudential Insurance Company of America (Prudential), illegally conspired to support the price of Western Union stock so that they could profitably sell off their own holdings in that stock in the event that an anticipated tender offer for Western Union did not materialize. The conspirators consisted of defendants and Steven Azadian, a Bache account executive, who allegedly fraudulently induced plaintiffs to purchase and retain shares of Western Union by touting it as a likely tender offer candidate. They did this both after they learned the tender offer fell through

and during the period that the price of the shares was dropping and defendants were liquidating their own holdings.

The complaint alleges violations of sections 10(b) and 20(a) of the Securities and Exchange Act of 1934 (the 1934 Act), 15 U.S.C. §§ 78j(b) & 78t(a), the Racketeer Influenced and Corrupt Organization Act (RICO), 18 U.S.C. §§ 1961-68, and state law. Jurisdiction is based on 28 U.S.C. § 1331, because federal questions are alleged, and on pendent jurisdiction.

Defendants move to dismiss the complaint's fraud-related claims, including the alleged securities law violations, under Rule 9(b) of the Federal Rules of Civil Procedure for failure to allege fraud with particularity. They also move to dismiss the RICO claim under Rule 12(b)(6) for failure to state a claim, the various state law claims for lack of jurisdiction and also, in one instance, for failure to state a claim, and the claim for punitive damages.

### I.

The amended complaint alleges, in substance, the following. In the spring of 1983, plaintiffs became friends with Azadian, who held himself out as an expert in securities matters. Azadian eventually began to advise plaintiffs to sell their shares in M/A Com, Inc. (M/A Com) and to purchase Western Union shares. He described M/A Com stock as speculative, at one time warning that its price was likely to decline precipitously. In April 1983, plaintiffs finally acceded to his repeated blandishments by selling their M/A Com shares and purchasing 2400 shares of Western Union, but only after receiving assurances that such action was consistent with conservative investment strategies of "capital preservation."

Azadian did not inform plaintiffs that defendants themselves held approximately 53,800 shares in Western Union for their own account. Bayrock Investment Advisory Services (Bayrock), a division of Bache, apparently had purchased 4.9% of Western Union's outstanding common stock in March 1983. During the summer and fall

of 1983, Western Union's price began to fall. Nonetheless Azadian repeatedly urged plaintiffs to retain their Western Union investment. To that end he showed plaintiffs in the summer of 1983 reports prepared by a Bache technical expert which stressed that Western Union was a likely tender offer candidate.

Defendants should then have known that such reports were inaccurate. In May 1983 defendants decided to sell the majority of their holdings in Western Union precisely because the anticipated tender offer had not materialized. They sold 29,000 Western Union shares during the spring and summer of 1983.

The same pattern of alleged deception persisted throughout the balance of 1983 and most of 1984, as the price of Western Union continued to fall. Azadian asserted his confidence in the soundness of Western Union and continued to show plaintiffs technical reports to confirm his advice. During this same period, and without notifying plaintiffs, defendants proceeded to dispose of a total of 51,000 Western Union shares. Plaintiffs' brief asserts that defendants eliminated their Western Union holdings by the end of the third quarter of 1984.

The final blow came on or about November 21, 1984, when the major banks cancelled Western Union's $108 million credit line. Western Union's stock price plummeted even more precipitously, and two days later plaintiffs sold their shares, sustaining losses amounting to $63,000.

The failure of defendants to inform plaintiffs of their plans to sell large quantities of Western Union stock, coupled with their continuing efforts to persuade plaintiffs first to purchase and then retain shares of Western Union, "constituted a conspiracy between Prudential and Bache to support the price of Western Union stock".

## II.

Plaintiff's first two causes of action allege that the conspiracy constituted the use of a manipulative and deceptive device in connection with the purchase and sale of a security in contravention of § 10(b) of the 1934 Act and of Rule 10b–5 promulgated thereunder. The second cause of action differs from the first in that it incorporates the concealment of Bayrock's holdings in Western Union as part of the overall conspiracy by defendants to support the price of Western Union's stock. Defendants argue that neither cause of action has been pled with the requisite particularity required by Rule 9(b).

## A.

Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity." The Second Circuit has identified four purposes served by Rule 9(b): (1) to enable each defendant accused of fraudulent conduct to have sufficient information to frame a response, (2) to prevent the harm to a defendant's reputation and good will that results from unwarranted charges of fraud, (3) to diminish the potential for groundless strike suits filed for their settlement value, and (4) to prevent groundless claims from wasting the court's time. *See Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 114–15 (2d Cir.1982); *Ross v. A.H. Robins Co.*, 607 F.2d 545, 557 (2d Cir.1979), *cert. denied*, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980). *See also Crystal v. Foy*, 562 F.Supp. 422, 424 (S.D.N.Y.1983) (Weinfeld, J.).

To state a claim under section 10(b), plaintiff must allege acts indicating an intent to deceive, manipulate or defraud. *See Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 192 n. 7, 96 S.Ct. 1375, 1380 n. 7, 47 L.Ed.2d 668 (1976). A complaint alleging fraud under the securities laws "states a cause of action ... only if the conduct alleged can be fairly viewed as 'manipulative or deceptive.'" *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 473–74, 97 S.Ct. 1292, 1301, 51 L.Ed.2d 480 (1977). Rule 9(b), which is applicable to claims under section 10(b), *see A.H. Robins Co., supra*, 607 F.2d at 557, further requires the complaint to " 'allege with some specificity the acts constituting fraud.'" *Decker, supra*, 681 F.2d at 114 (quoting *Rodman v.*

*Grant Foundation,* 608 F.2d 64, 73 (2d Cir.1979)). Mere "conclusory allegations that defendant's conduct was fraudulent or deceptive are not enough." *Id.* (citing *Segal v. Gordon,* 467 F.2d 602, 607 (2d Cir. 1972)).

To meet these requirements the complaint must thus " 'allege (1) specific facts, (2) sources that support the alleged specific facts, and (3) a basis from which an inference of fraud may be fairly drawn.' " *Schwartz v. Novo Industri, A/S,* 635 F.Supp. 1463, 1465 (S.D.N.Y.1986) (Weinfeld, J.) (quoting *Crystal, supra,* 562 F.Supp. at 425). *See also Deutsch v. Flannery,* 597 F.Supp. 917, 921 (S.D.N.Y.1984) (Keenan, J.).

■ Measured against these criteria, the first two causes of action are deficient. For the most part, the amended complaint alleges specific facts and provides sources in their support. But it does not allege sufficient specific facts to establish a basis from which an inference of fraud can be drawn. From the allegation that defendants were selling shares of Western Union from May 1983 on while Bache's account executive was simultaneously touting Western Union as a likely tender offer candidate, plaintiffs ask the court to infer that there was a conspiracy to cause plaintiffs to retain their shares in Western Union for the purpose of supporting its price. A claim alleging fraudulent inducement to retain stock, however, does not state a claim under Rule 10b–5. In *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 737–38, 95 S.Ct. 1917, 1926–27, 44 L.Ed.2d 539 (1975), the Supreme Court held that pursuant to the language of the 1934 Act and Rule 10b–5, the fraud must be "in connection with the purchase or sale of any security," and that it is not enough to allege that a shareholder "decided not to sell their shares because of an unduly rosy representation or a failure to disclose unfavorable material."

Plaintiffs, in effect, ask the court to draw the inference that defendants in April 1983, when they held Western Union stock in expectation of a tender offer, conspired to induce plaintiffs through material mis-representations and omissions to purchase shares so that if the tender offer failed to materialize, defendants would have a stronger market in which to dispose of their own holdings. However, the amended complaint does not spell this out with particularity. It alleges that defendants did not decide to sell their Western Union stock until May 1983, a month after plaintiffs had purchased shares. Thus the relevant misrepresentation or omission, if any, is not Azadian's touting of Western Union as a likely tender offer candidate, but the concealment of defendants' intention to sell their shares without notifying plaintiffs if and when they perceived that a tender offer was not forthcoming.

Generally Rule 9(b) pleadings cannot be based on information and belief, but this rule is relaxed as to matters peculiarly within the adverse parties' knowledge. *See, e.g., Segal, supra,* 467 F.2d at 608. In such instances, "the allegations must then be accompanied by a statement of the facts upon which the belief is founded." *Id.* Plaintiffs' complaint, if generously read, *see Yoder v. Orthomolecular Nutrition Institute, Inc.,* 751 F.2d 555, 558 (2d Cir. 1985), predicates its allegation of a conspiracy between Prudential and Bache to support the price of Western Union on the following allegedly material misrepresentations and omissions that occurred prior to plaintiffs' purchase:

(1) Azadian's representations that M/A Com stock was speculative and at one point, likely to decline precipitously (¶¶ 18, 22).

(2) Azadian's representations before April 1983 that Western Union was a likely candidate for a tender offer (¶¶ 19–20).

(3) Azadian's representation that the purchase of Western Union stock was compatible with a strategy of conservative investment and "capital preservation" (¶ 24).

(4) The failure to inform plaintiffs that defendants held approximately 53,800 shares of Western Union during the spring of 1983 (¶¶ 29–31).

(5) The failure to inform plaintiffs that Bayrock had purchased in March 1983 approximately 4.9% of Western Union (¶¶ 40, 46–47).

The following allegedly material misrepresentations and omissions occurred after plaintiffs' April 1983 purchase of Western Union stock, and although not sufficient in and of themselves to state Rule 10b–5 causes of action, *see Blue Chip Stamps, supra,* are relevant to whatever extent they permit the inference that the conspiracy to support the stock price of Western Union existed at the time of plaintiffs' purchase:

(6) The failure to inform plaintiffs of defendants' decision in May 1983, after the tender offer had not materialized, to sell the majority of their Western Union holdings and of defendants' subsequent sale of 29,000 shares during the spring and summer of 1983 (¶¶ 32–33).

(7) Azadian's repeated advice to plaintiffs during the spring and summer of 1983 not to sell their shares, and his showing them reports in the summer of 1983, prepared by a Bache technical expert, stressing that Western Union was a likely tender offer candidate (¶¶ 34, 57, 59).

(8) Azadian's failure to provide plaintiffs with information regarding Bayrock's investment in Western Union, after Robert Fingar had learned of it and requested information thereon (¶¶ 44–46).

(9) Azadian's repeated expressions of confidence in the soundness of Western Union stock throughout the summer and fall of 1983 and the first eleven months of 1984, notwithstanding its declining price, and his use of further technical reports to confirm the validity of his advice (¶¶ 62–64).

(10) Azadian's wife, his successor at Bache, stating to plaintiffs on November 20, 1984, one day before Western Union's credit line with the major banks was cancelled, that "Prudential-Bache is very high on Western Union" and referring to technical reports indicating that a tender offer would become more likely if its price continued to drop (¶¶ 65–67).

The volume of these allegations does not compensate for the complaint's failure to tie them together with more specific details as to the dates and content of relevant statements, the manner in which certain ones were misleading, and how they are connected to the particular defendants named in the complaint. *See, e.g., Zerman v. Ball,* 735 F.2d 15, 22–23 (2d Cir.1984). Each misrepresentation (except for the tenth one) was allegedly made by Azadian, but the amended complaint does not spell out the specifics of the conspiracy between defendants to support the price of the stock. Indeed, there is no allegation of defendants' knowledge of what Azadian was doing or of his knowledge of the number of shares held by the defendants and their plans to sell.

Nor does the amended complaint allege sufficient facts from which an inference of scienter as to each particular defendant can be drawn. *See Luce v. Edelstein,* 802 F.2d 49, 54, 57 (2d Cir.1986); *Savino v. E.F. Hutton & Co.,* 507 F.Supp. 1225, 1232 (S.D.N.Y.1981). Plaintiffs emphasize Azadian's circulation of defendants' technical reports predicting Western Union to be a likely tender offer candidate. This type of speculative information, however, without more generally does not form a basis for Rule 10b–5 liability. *See, e.g., Goldman v. Belden,* 754 F.2d 1059, 1068 (2d Cir.1985).

Plaintiffs thus seek to have the court infer fraudulent intent through allegations that the reports were still being drawn up and circulated (1) after the time when defendants realized that "said tender offer [had] failed to materialize (¶ 32), (2) simultaneous to or after the "spring and summer of 1983" in which defendants sold 29,000 of their Western Union shares (¶ 33), and (3) after defendants knew or should have known, "[d]uring 1984," that the credit status of Western Union was in peril (¶ 60). The times alleged are stated only in general terms. Because of the overlap in times an inference of fraud is impermissible.

Information that should be within plaintiff's knowledge, such as each date they

were shown a report touting Western Union's tender offer possibilities, is not pled other than by general references to the "summer of 1983" (¶ 57). The circulation of later reports is referenced to "the summer and fall of 1983" and the "first eleven months of 1984" (¶ 62–64). The content of these reports is then only summarized as "supporting Azadian's advice with regard to Western Union" (¶ 64).

Plaintiffs also fail to indicate the dates of the reports, the time frames they were intended to cover, and how they correlated at the relevant times to the price of Western Union stock, and the amount of defendants' holdings. The significance of this sort of information is readily apparent by considering the alleged misrepresentation by Azadian's wife on November 20, 1984. If, as plaintiffs' brief indicates, defendants had already divested themselves of all Western Union stock, an inference of fraud, or at least of the particular fraud alleged, does not arise.

■ Moreover, the amended complaint fails to indicate when defendants found out or should have known about Western Union's tenuous credit status. *Cf. Denny v. Barber,* 576 F.2d 465, 470 (2d Cir.1978) (Rule 9(b) requirements not met where complaint failed to allege date at which defendants knew "investments had become so unacceptably 'risky' that disclosure was required"). There is thus no way to ascertain whether the failure to disclose that status was a fraud permeating the technical reports. The amended complaint alleges that Western Union's credit status deteriorated "[d]uring 1984" (¶ 60), but then inexplicably faults the earlier "summer of 1983" reports for failing to reveal this "precarious credit position" (¶ 61).

Accepting the amended complaint's theory of conspiracy liability, without a more specific allegation of facts fairly supporting a reasonable inference of "manipulative and fraudulent conduct attributable to each defendant," *Crystal, supra,* 562 F.Supp. at 426, would potentially transmogrify into securities law violations innumerable instances of ordinary brokerage transactions. The complaint plainly sets forth two activities: selling of Western Union stock by defendants, and touting by Azadian to plaintiffs of Western Union's investment potential. Pleadings that purport to connect two such activities as one fraudulent scheme must be sufficiently particular. A less stringent requirement would expose a brokerage firm to a federal securities law suit whenever its employee recommends an investment that diverges from the firm's own holdings, and that investment goes sour. Taken to an extreme, the only safe recommendation would be the one that exactly mimics both the firm's own trades and its recommendations to other clients.

One of the purposes of Rule 9(b)'s particularity requirement is to avoid instances of where "a plaintiff is not seeking to 'redress ... a wrong,' but rather 'to find one.'" *Crystal, supra,* 562 F.Supp. at 433 (quoting *Segal, supra,* 467 F.2d at 608). "Without facts from which an inference of fraud can be drawn, plaintiff is not entitled to use the provisions of the discovery rules to find those facts." *Deutsch, supra,* 597 F.Supp. at 922.

In the absence of more particular pleading, this case is distinguishable from *Goldman v. Belden, supra,* where the complaint alleged that defendant's officers issued optimistic statements about the defendant corporation's future prospects while simultaneously disposing of large blocks of their holdings in defendant's stock. There, the touter and the seller were identical, and the inference of fraudulent conduct naturally followed. Nor is the present complaint comparable to *Chasins v. Smith, Barney & Co.,* 438 F.2d 1167 (2d Cir.1970), where the defendant brokerage firm failed to reveal to the plaintiff whose account it was handling that it was a market-maker in the securities which it was selling to plaintiff as a principal. Again, the direct nature of the relationship allowed a reasonable inference of fraud.

■ The complaint's failure to plead a sufficient connection between the selling by defendants and the touting by Azadian requires dismissal of both securities law counts. Although Azadian's circulation of corporate technical reports reciting alleg-

edly inaccurate information is an allegation of fact that might have sustained an inference of fraud, it is incapable of doing so where the relevant correlating dates and other supporting information is not particularly alleged.

### B.

The question remains whether any of the five alleged material misrepresentations or omissions occurring prior to plaintiffs' purchase of the stock independently suffices to state a cause of action under Rule 10b–5.

■ Even if the court were to assume that Azadian's representations as to M/A Com's speculativeness and Western Union's attractiveness were representations of fact, the amended complaint lacks any allegation that such statements were untrue, or, in the case of M/A Com, caused plaintiffs to suffer losses. Similarly, the failure to inform plaintiffs before their purchase of the shares about defendants' and Bayrock's Western Union holdings is nowhere alleged to be material (at least in absence of a secret intention to dispose of such shares at plaintiffs' expense). Indeed, there is neither an allegation nor a reason to believe that defendants would have a duty to reveal such information. *Cf. Chasins, supra.*

■ Azadian's representation that the purchase of Western Union stock was compatible with a strategy of conservative investment and "capital preservation," although a closer question, also fails to state a cause of action under Rule 10b–5. The amended complaint does not allege that Western Union stock was, in fact, incompatible with such investment goals. There is an allegation that Bache had given M/A Com its highest rating during the spring of 1983, while assigning a lower rating to Western Union (¶ 55), but that does not sufficiently give rise to an inference that Western Union stock was inappropriate for plaintiffs' investment objectives.

■ Moreover, even if the court assumes that the recommendation of Western Union stock was an unsuitable one for plaintiffs' purposes, in the absence of an allegation of scienter, Azadian's conduct at most rises to a claim of breach of fiduciary duty, not a violation of Rule 10b–5. *See Pross v. Katz,* 784 F.2d 455, 458 (2d Cir.1986); *Clark v. John Lamula Investors, Inc.,* 583 F.2d 594, 600 (2d Cir.1978). The amended complaint does allege that Azadian admitted he was "relieved" when a Bache technical report "supported the advice [he] had given to plaintiffs" (¶ 58). But this apparently refers to the report's confirmation that Western Union was indeed a likely candidate for a tender offer, and not to whether Western Union's stock was an investment consistent with "capital preservation" goals.

### III.

Plaintiffs' fourth cause of action alleges that defendants violated section 1962 of RICO, 18 U.S.C. § 1962. Although the complaint fails to refer to any particular subsection of section 1962, the context of the pleadings indicates that the claim is made under section 1962(c), and plaintiffs' brief refers solely to section 1962(c). That section makes it unlawful "for any person employed by or associated with any enterprise ... to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."

■ Defendants urge that this count of the complaint is deficient in its allegation that "[d]efendants' use of legitimate business entities in furtherance of securities fraud constitutes the conduct of an 'enterprise' within the meaning of RICO" (¶ 82), because it casts Prudential and Bache as both the "enterprise" and the "person" conducting the affairs of the enterprise.

In *Bennett v. United States Trust Co.,* 770 F.2d 308, 315 (2d Cir.1985), *cert. denied,* 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986), the Second Circuit held that "under section 1962(c) a corporate entity may not be simultaneously the 'enterprise' and the 'person' who conducts the affairs of the enterprise through a pattern of racketeering activity." This holding necessarily controls the result here. Plaintiffs' RICO claim is dismissed.

Because plaintiffs' federal securities law and RICO claims are dismissed, plaintiffs' pendent state law claims (counts three, five, six and seven) are dismissed also. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). In light of this disposition, the court does not reach defendants' other contentions.

Defendants' motion to dismiss the complaint is granted, with leave to replead in accordance with this memorandum and order. Plaintiffs may serve an amended complaint within thirty days of the date hereof. So ordered.